FILED

May 20 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0644

DA 13-0644

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 140

THE ESTATE OF JUDITH K. GLEASON,
and JAN GREGSON and JAMES GLEASON,
as Personal Representatives of the
Estate of Judith Gleason,

        Plaintiffs and Appellants,

    v.

CENTRAL UNITED LIFE INSURANCE
COMPANY, HELENA SCHOOL DISTRICT #1,
GAIL MOONEY and DOES 1-10,

        Defendants, Appellees, and Cross-Appellant.

-----------------------------------------------

CENTRAL UNITED LIFE INSURANCE
COMPANY,

        Counter-Plaintiff, and Cross-Appellant,

    v.

THE ESTATE OF JUDITH K. GLEASON,
and JAN GREGSON and JAMES GLEASON,
as Personal Representatives of the
Estate of Judith Gleason,

        Counter-Defendants.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis & Clark, Cause No. BDV 2011-707
                Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                John M. Morrison (argued), Linda M. Deola, Morrison, Sherwood, Wilson
                & Deola, PLLP; Helena, Montana

For Appellees:

Randall J. Colbert (argued), Robert C. Lukes, Garlington, Lohn & Robinson, PLLP; Missoula, Montana

Argued and Submitted: November 18, 2014
Decided: May 20, 2015

Filed:

Clerk

2

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Jan Gregson and James Gleason, as co-personal representatives of the Estate of Judith Gleason (the Estate), appeal from various rulings by the First Judicial District, Lewis and Clark County. Defendant Central United Life Insurance, Co. (CULI) cross-appeals. We affirm in part, reverse in part, and remand for a new trial consistent with this opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 In 1990, Judith Gleason (Judith) purchased a cancer benefit insurance policy from Colonial Life & Accident Insurance Company, with an effective date of coverage of February 22, 1990. In March 2002, Judith was diagnosed with breast cancer. She underwent treatment until she died on March 28, 2010.

¶3 From the time she purchased the policy until her death, Judith paid all premiums owed. The policy remained in effect when she died in 2010. Judith never submitted a claim on the policy while she lived. After her death, Jan Gregson and James Gleason were named co-personal representatives of her estate (PRs).

¶4 In 2004, CULI acquired the cancer insurance policy from Colonial Life. CULI began servicing the policy in January 2002, and formally assumed the policy on or about October 1, 2004.

¶5 On or about April 5, 2010, the PRs submitted a notice of potential claim under the policy to CULI via phone call. The PRs then sent CULI a copy of Judith's death certificate, which attributed her death to cancer. CULI received the death certificate on

3

April 12, 2010. Medical bills and claim forms were sent to CULI in January 2011. On January 24, 2011, CULI requested additional documentation related to certain services provided from October 2009 through March 2010. On January 25, 2011, CULI issued an explanation of benefits stating that claims not submitted within the policy's notice period were not payable. The policy required claims to be filed within one year plus 90 days of the date of the claim. The PRs provided additional medical records to CULI in February 2011 and early March 2011.

¶6 On March 17, 2011, CULI paid certain claims arising within one year and 90 days prior to January 11, 2013, the date the claim forms and medical bills were received by CULI. This payment totaled $57,735.95. CULI reiterated that it would not pay for claims submitted outside the policy time limit.

¶7 On April 11, 2011, the PRs advised CULI that the Estate was contesting the denial of the untimely-filed claims. On June 24, 2011, CULI issued payment of a $5,000 death benefit payable under the policy.

¶8 On June 24, 2011, CULI filed a declaratory judgment action in Montana Federal Court. The Estate filed this action in State District Court on July 13, 2011. On December 15, 2011, the Federal Court declined to exercise jurisdiction and the declaratory judgment action was remanded to the State District Court for determination.

¶9 Over the next several months, both parties moved for summary judgment. On July 12, 2012, the District Court issued an order granting the Estate's motion for partial summary judgment and denying CULI's motion for summary judgment. In its order, the

4

court ruled that CULI owed payment for the untimely-filed claims, provided it was not prejudiced by the late notice. CULI admitted that it was not prejudiced because it had the information necessary to consider the claims under the policy. The court also ruled that the eight-year statute of limitations on written contracts barred claims for services rendered prior to April 5, 2002. This ruling was later amended to bar claims for services rendered prior to April 12, 2002.

¶10 In August 2012, CULI discovered that certain other medical expenses incurred within the policy time limit should have been covered. Accordingly, on August 20 and 22, 2012, CULI issued payments to the Estate for those claims. These payments totaled $17,195.28 and included prejudgment interest (calculated at 10% per annum) from March 17, 2011 to the date of the payments.

¶11 On January 17, 2013, pursuant to the District Court's July 12, 2012 order, CULI issued payment to the Estate for the untimely-filed claims. The payment totaled $539,717.90 and included prejudgment interest from March 17, 2011 to the date of the payment. Shortly thereafter, CULI warned the PRs not to distribute the funds because it intended to seek reimbursement of the payment on appeal. The PRs placed the funds in trust pending the outcome of this dispute.

¶12 Prior to trial both parties filed motions *in limine*. On March 1, 2013, the District Court issued an order on the motions. The court allowed CULI to present testimony about cases decided after its denial of the PRs' claim in order to "illustrate the unsettled nature of Montana law" with regard to the notice issue. The court also allowed the PRs

5

to present testimony regarding CULI's claim handling in other states and how other insurance companies handle late notice claims in other jurisdictions.

¶13 The case was tried by jury from March 4-8, 2013. On March 4, 2013, prior to the commencement of trial, the court entered a directed verdict in favor of the Estate on the untimely-filed claims for the amount of $539,717.90. The court advised the jury that it had directed a verdict on that issue and that CULI had paid that amount to the Estate.

¶14 At the conclusion of trial the court submitted a special verdict form to the jury. The verdict form directed the jury to determine the amount of additional money CULI owed under the policy, if any, and whether CULI had violated the Montana Unfair Trade Practices Act (UTPA). If the jury found that CULI had violated the UTPA, it was to determine the amount of damages suffered and, if it awarded damages, to consider whether CULI had acted with malice. If the jury found CULI acted with malice it could then determine whether to award punitive damages.

¶15 The jury returned a verdict finding that no additional money was due under the policy. The jury found that CULI had violated the UTPA, but did not award damages. The jury therefore did not consider whether CULI acted with malice.

¶16 Following trial, the District Court awarded trial costs to CULI, finding that it was the prevailing party because the jury had awarded no contract or UTPA damages to the Estate. The District Court awarded attorney's fees and costs to the Estate for its recovery under the policy.

6

¶17 The Estate timely appealed and CULI timely cross-appealed. The Estate contends that the District Court erred when it: (a) required proof of UTPA damages in addition to wrongfully denied benefits before allowing the jury to consider malice and punitive damages, (b) failed to grant a directed verdict that CULI violated the UTPA, (c) allowed the jury to consider judicial opinions related to the notice-prejudice rule with regard to whether CULI had a reasonable basis in law to deny the claims, and (d) awarded trial costs to CULI.

¶18 On cross-appeal, CULI maintains the District Court erred when it: (a) applied the notice-prejudice rule and determined that the Estate's claims were not barred by the policy's notice provision, (b) applied the statute of limitations from the time CULI received notice of the Estate's claims, (c) failed to dismiss the UTPA claim because CULI had a reasonable basis in law to deny the claim, (d) allowed evidence of claim handling practices by other insurers with regard to whether CULI had a reasonable basis in law to deny the UTPA claim, and (e) awarded attorney's fees and costs to the Estate.

¶19 Because of our holding here, we do not reach several of the issues raised by the parties. We therefore restate the issues on appeal and cross-appeal and address them in the following order:

1. *Did the District Court err when it applied the notice-prejudice rule in finding that CULI was liable to the Estate for the untimely-filed claims?*

2. *Did the District Court err when it instructed the jury that it must first find UTPA damages beyond damages for failure to pay benefits under the policy before considering malice and punitive damages?*

7

*3. Did the District Court err by failing to direct a verdict against CULI for violating the UTPA?*

*4. Did the District Court err when it did not dismiss the UTPA claim because CULI had a reasonable basis in law for denying the untimely filed claims?*

*5. Did the District Court err by applying the statute of limitations from the date the PRs submitted their claim to CULI rather than from the date suit was filed?*

*6. Did the District Court err in allowing the Estate to present evidence of out-of-state law and claim handling practices that were not directly related to the case at hand and allowing CULI to present evidence of Montana cases related to the notice-prejudice rule?*

*7. Did the District Court err in awarding trial costs to CULI where the jury found that the UTPA was violated and the court entered a directed verdict in favor of the Estate?*

*8. Did the District Court err in awarding attorney's fees to the Estate?*

STANDARDS OF REVIEW

¶20 We review a district court's conclusions of law for correctness. *Weter v. Archambault*, 2002 MT 336, ¶ 18, 313 Mont. 284, 61 P.3d 771. We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria as the district court. *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶ 4, 327 Mont. 99, 113 P.3d 275. We review a district court's jury instructions to determine whether the instructions, as a whole, fully and fairly instruct the jury on the applicable law. *State v. Hudson*, 2005 MT 142, ¶ 10, 327 Mont. 286, 114 P.3d 210. The instructions must prejudicially affect a party's substantial rights to constitute reversible error. *Hudson*, ¶ 10.

8

¶21 A district court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Daniels*, 2011 MT 278, ¶ 11, 362 Mont. 426, 265 P.3d 623.

DISCUSSION

¶22 *1. Did the District Court err when it applied the notice-prejudice rule in finding that CULI was liable to the Estate for the untimely-filed claims?*

¶23 The "notice-prejudice" rule in the realm of insurance law provides that late notice of a claim (i.e., notice outside the time limit established in the written insurance policy) will not preclude coverage unless the insurer can demonstrate that it was prejudiced by the lateness of the notice. We have previously applied elements of the notice-prejudice rule in uninsured and underinsured motorist cases without explicitly adopting the rule. We do so now in the context of first party insurance claims.

¶24 We begin our analysis with the proposition that if an insurance contract's terms are clear and unambiguous, we will enforce the terms as written unless the term violates public policy. *State Farm Mut. Auto. Ins. Co. v. Gibson*, 2007 MT 153, ¶ 11, 337 Mont. 509, 163 P.3d 387. However, "a provision that defeats coverage for which valuable consideration has been received violates Montana public policy." *State Farm*, ¶ 11.

¶25 In *Sorensen v. Farmer's Ins. Exch.*, 279 Mont. 291, 927 P.2d 1002 (1996), we considered a situation where an injured motorist, Sorensen, settled a third party claim and executed a release with State Farm (the other driver's insurer) before bringing an underinsured motorist claim against her own insurer, Farmers Insurance Exchange. Farmers denied coverage, citing a policy provision prohibiting Sorensen from doing

anything to prejudice Farmers' subrogation rights. Farmers argued that by executing the release against the liable parties and State Farm, Sorensen destroyed its subrogation rights and breached the insurance contract.

¶26 Citing a plethora of cases from other jurisdictions, we adopted a "no prejudice" rule, holding that, as a matter of public policy, "denying accident victims indemnification based upon their action which can have no effect on the insurer's ability to subrogate will not further the purpose of underinsured motorist coverage." *Sorensen*, 279 Mont. at 294-296, 927 P.2d at 1004-1005.

¶27 We followed *Sorensen* with *Augustine v. Simonson*, 283 Mont. 259, 940 P.2d 116 (1997). In *Augustine*, we considered "exhaustion" clauses in underinsurance policies. Concluding that such clauses were against public policy, we stated: "[a]bsent some showing of material prejudice to the underinsurance carrier, a claim for underinsured motorist coverage may not be precluded on a technicality." 283 Mont. at 264, 940 P.2d at 119 (citing *Sorensen*, 279 Mont. at 295, 927 P.2d at 1004).

¶28 In *Augustine*, while not directly addressing the notice-prejudice rule, we also cited § 28-2-701, MCA, which provides an exception to enforcing an unambiguous contract provision "if that term violates public policy or is against good morals." 283 Mont. at 263-264, 940 P.2d at 119.

¶29 More recently, in *Lee v. Great Divide Ins. Co.*, 2008 MT 80, 342 Mont. 147, 182 P.3d 41, we upheld a denial of coverage for violation of a notice provision after discussing the ways the late notice had prejudiced the insurer. Lee, ¶¶ 20-21. Such

10

analysis would be unnecessary without the unstated possibility that a lack of prejudice could have compelled a different result. These cases demonstrate our longstanding inclination to require an insurer to establish prejudice by late notice of a claim before we will enforce the coinciding exclusion.

¶30 Additionally, the notice-prejudice rule accords with Montana's established anti-forfeiture laws. Section 28-1-408, MCA, provides that a contract provision involving a forfeiture "must be strictly interpreted against the party for whose benefit it is created." Section 28-1-104, MCA, provides that a party in danger of forfeiting the benefits of a contract due to a failure to comply with a provision in the contract "may be relieved from the obligation upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." These statutes are particularly applicable to situations involving failures to comply with time limitations. We have explained that § 28-1-104, MCA, was enacted "for the benefit of obligors whose *failure to punctually perform* would result in loss to them in the matters in respect to which they have contracted . . . . The intention of the law under this statute is that a forfeiture should not be needlessly enforced." *Quigley v. Acker*, 1998 MT 72, ¶ 31, 288 Mont. 190, 955 P.2d 1377 (quoting *Yellowstone County v. Wight*, 115 Mont. 411, 417, 145 P.2d 516, 518 (1943)) (emphasis added).

¶31 The statute prevents forfeiture where the party failing to comply with a contract provision can fully compensate the other party for any injury caused by the failure. It follows that if the aggrieved party does not suffer injury, no compensation is required to

11

avoid forfeiture except in the case of a grossly negligent, willful, or fraudulent breach of duty, which is not alleged here.

¶32    Thus, in situations where the aggrieved party is not injured by the other party's failure to comply with a notice provision, the protections provided by the notice-prejudice rule mirror those protections enumerated in our anti-forfeiture statutes. Under the statutes, a party who fails to comply with a time limit provision may avoid forfeiture without compensating the other party unless that other party is injured by the failure. Likewise, under the notice-prejudice rule, an insured who fails to comply with a notice provision may avoid having coverage defeated unless the insurer is prejudiced by the failure.

¶33    On the other hand, if the aggrieved party/insurer can show that it was injured/prejudiced by the other party's failure, neither the anti-forfeiture statute nor the notice-prejudice rule would protect the failing party from forfeiture/defeat of coverage.

¶34    These statutes establish the public policy of Montana that forfeiture should not be enforced absent injury or prejudice. The similarities in both intent and effect between the anti-forfeiture statute and the notice-prejudice rule support our adoption of the latter. In a practical sense, the notice-prejudice rule could be viewed as an application of the anti-forfeiture statute to situations where the potential injury to the aggrieved party—prejudice—cannot be cured by compensation, and thus forfeiture may be avoided only in the absence of injury.

¶35 Additionally, the notice-prejudice rule accords with the well-established contract principle of non-material breach. Generally, a non-breaching party must continue to perform its obligations under a contract unless the breach was material to the contract. The Restatement (Second) of Contracts states: "[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." Restatement (Second) of Contracts, § 229 (1979). A comment further explains what constitutes a "disproportionate" forfeiture:

> In determining whether the forfeiture is "disproportionate," a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture. The character of the agreement may, as in the case of insurance agreements, affect the rigor with which the requirement is applied.

Restatement (Second) of Contracts, § 229, cmt. b. *See also Flaig v. Gramm*, 1999 MT 181, ¶ 25, 295 Mont. 297, 983 P.2d 396 ("in order for a breach to justify the injured party's suspending performance, the breach must be significant enough to amount to the nonoccurrence of a constructive condition of exchange") (quoting E. Allan Farnsworth, Contracts § 8.16, at 611 (1982)). The notice-prejudice rule is an application of this principle in the insurance context. The rule prevents insurers from suspending performance due to the insured's failure to comply with the policy notice provision unless the insurer can establish prejudice and thus demonstrate that the failure was material.

13

¶36    CULI argues that this Court rejected application of the notice-prejudice rule in *Steadele v. Colony Ins. Co.*, 2011 MT 208, 361 Mont. 459, 260 P.3d 145.  We disagree.  In *Steadele* we considered a third party claim against an insurer where the insured had failed to provide notice of the claim within the notice requirement in the policy.  In our analysis, we first cautioned that "[e]xclusions from coverage are to be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy."  *Steadele*, ¶ 18.  We also noted that prior cases in Montana have treated notice provisions as conditions precedent to coverage.  *Steadele*, ¶ 22 (citing *LaBonte v. Mut. Fire & Lightning Ins. Co.*, 75 Mont. 1, 12, 241 P. 631, 635 (1925); *Riefflin v. Hartford Steam Boiler Inspection & Ins. Co.*, 164 Mont. 287, 293, 521 P.2d 675, 678 (1974)).  In upholding the denial of coverage, however, we focused on the fact that the lack of timely notice did in fact prejudice the insurer because "it was deprived of the ability to investigate, to locate witnesses, to appoint counsel, to engage in discovery, to negotiate a settlement, and to develop a trial strategy."  *Steadele*, ¶ 28.  We also explained that the failure to notify in that case was not "*de minimus*."  *Steadele*, ¶ 29.  These holdings are consistent with application of the notice-prejudice rule.

¶37    By expressly adopting the notice-prejudice rule, we reach the natural conclusion of an ongoing trend in our jurisprudence.  *See XL Specialty Ins. Co. v. Patrol Helicopters, Inc.*, 2009 U.S. Dist. LEXIS 118475 (D. Mont.) (affirming *XL Specialty Ins. Co. v. Patrol Helicopters, Inc.*, 2009 U.S. Dist. LEXIS 118580 (D. Mont.) (predicting this Court would apply notice-prejudice rule based on public policy and previous decisions)).  Our

willingness to adopt the notice-prejudice rule stems not only from public policy concerns, but from anti-forfeiture protection principles codified by the Montana Legislature, and from equitable principles established in contract law. In adopting the rule, we join a vast majority of states that have done the same. *See Prince George's County v. Local Gov't Ins. Trust*, 388 Md. 162, 183, n.9, 879 A.2d 81, 94, n.9 (Ct. App. Md. 2005) (collecting cases). Our decision here reaffirms our commitment to upholding the "fundamental protective purpose" of an insurance contract and ensures that a non-material, technical breach of a notice provision will not deprive the insured of coverage for which valuable consideration has been paid. *Steadele*, ¶ 18; *State Farm*, ¶ 11. "[P]ublic policy considerations favor adequate compensation, even for non-mandatory coverage." *State Farm*, ¶ 21.

¶38   To restate: the notice-prejudice rule allows an insurer to deny coverage based on a failure to comply with a policy notice provision only if the insurer can demonstrate that it was prejudiced by the late notice. Here, CULI admitted to the District Court that it was not prejudiced by late notice. The District Court thus found that CULI was prohibited from denying the Estate's claims on the basis of late notice.

¶39   The District Court's application of the notice-prejudice rule in this case is hereby affirmed and we formally adopt the notice-prejudice rule in the first party insurance coverage context.

¶40   *2. Did the District Court err when it instructed the jury that it must first find UTPA damages beyond damages for failure to pay benefits under the policy before considering malice and punitive damages?*

15

¶41 The answer to this question hinges on our interpretation of § 33-18-242, MCA, of the UTPA. We hold that when an insurer is found to have violated the UTPA, damages due to denial of claims or delay in payment of claims in breach of the insurance contract may constitute compensatory UTPA damages sufficient to present the question of malice to the trier of fact.

¶42 Section 33-18-242, MCA, provides a cause of action against an insurer for engaging in certain unfair claim settlement practices listed in § 33-18-201, MCA. These practices include the one allegedly committed by CULI: "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Section 33-18-201(6), MCA. Section 33-18-242(4), MCA, provides that, for violations of § 33-18-201(6), MCA, "[e]xemplary [(i.e. punitive)] damages may also be assessed in accordance with 27-1-221." Section 27-1-221, MCA, allows for the award of punitive damages when a defendant is found to have committed actual malice. Section 27-1-221(1), MCA.

¶43 In its instructions the District Court directed the jurors to determine whether CULI had violated the UTPA and, if so, to determine what damages were caused by CULI's violation. If the jurors determined that CULI's violation did not cause additional damages they were directed not to answer the questions of whether CULI was guilty of actual malice or whether CULI's malicious behavior warranted an award of punitive damages.

16

¶44 The Estate urges this Court to reverse and remand for a new trial because the District Court's jury instructions incorrectly required the jury to find UTPA damages *in addition* to the damages proximately caused by the breach of the insurance contract before it could consider the question of malice. The Estate asks that we clarify the standard and hold that damages arising out of a breach of an insurance contract can simultaneously comprise proximately caused UTPA damages that can give rise to punitive damages if malice is shown.

¶45 CULI maintains that the special verdict form was correct because § 27-1-220(1), MCA, predicates the award of punitive damages on an award of compensatory damages and that § 27-1-220(2), MCA, expressly prohibits an award of punitive damages in actions arising from a breach of contract. CULI asserts that, absent the jury finding specific UTPA damages in addition to the damages resulting from the breach of contract, a jury cannot consider the question of whether the insurer demonstrated malice sufficient to award punitive damages. We disagree.

¶46 Section 27-1-220(2)(a), MCA, prohibits punitive damages in contract cases, "[u]nless otherwise expressly provided by statute. . . ." Section 27-1-220(2)(b), MCA, expressly states, "[s]ubsection (2)(a) does not prohibit recovery of punitive damages in . . . an action arising under 33-18-201," the UTPA statute at issue. Section 27-1-220, therefore, does not foreclose the possibility of a recovery of punitive damages in a UTPA action premised on a breach of the insurance contract.

¶47    CULI contends that we settled this issue in its favor by holding in *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, 351 Mont. 464, 215 P.3d 649, that, even under the UTPA, compensatory damages are a prerequisite to punitive damages.  We do not disagree with CULI's characterization of our holding, but we disagree that the case is applicable to this situation.  In *Jacobsen,* a third party (Jacobsen) brought a claim against Allstate for damages arising out of a car accident caused by Allstate's insured.  After a contentious settlement process, Jacobsen filed a complaint against Allstate, seeking compensatory damages for, *inter alia*, violation of the UTPA and common law bad faith.  Jacobsen also sought punitive damages, alleging actual malice.  *Jacobsen*, ¶¶ 2-3.  A jury found that Allstate committed common law bad faith and violated the UTPA.  As damages, the jury awarded Jacobsen the costs and fees incurred while settling the underlying claim.  The jury also found Allstate acted with actual malice and awarded Jacobsen punitive damages.  *Jacobsen*, ¶ 6.

¶48    On appeal, we reversed the award of compensatory damages because, absent a specific exception, neither costs nor attorney's fees are recoverable compensatory damages in a claim for insurance bad faith.  *Jacobsen*, ¶¶ 18-24.  Having reversed the compensatory damages we reversed the award of punitive damages because "without an award of compensatory damages, there can be no award of punitive damages." *Jacobsen*, ¶ 67.

¶49    *Jacobsen* is distinguishable from the case at hand.  The question in *Jacobsen* was, in relevant part, whether costs and attorney's fees could function as compensatory

18

damages under the UTPA. Here, the question is whether the court's award of benefits via directed verdict served as an award of compensatory damages sufficient to place the question of punitive damages before the jury without requiring the establishment of additional damages. Our holding in *Jacobsen*, therefore, does not support CULI's argument.

¶50 Section 33-18-242, MCA, expressly provides for an award of punitive damages in cases of certain UTPA violations. It does not condition the award of punitive damages on a showing of compensatory damages *beyond* the damages arising out of the breach of the insurance contract which gave rise to the UTPA action. The purpose of § 33-18-242, MCA, is to provide an additional cause of action, beyond simply an action for breach of contract, where an insurer violates the good faith claim settlement practices set forth in § 33-18-201, MCA. The fact that damages due to a breach of the UTPA may also be damages arising out of a breach of contract should not preclude the award of punitive damages if it can be shown that the insurer acted with malice.

¶51 In *Lorang v. Fortis*, 2008 MT 252, 345 Mont. 12, 192 P.3d 186, we held that "Montana's statutory law provides that punitive damages may be assessed against an insurer which has committed the UTPA violations alleged here." *Lorang*, ¶ 90 (citing § 33-18-242(4), MCA). We did not state that the insured must show damages beyond those caused by the breach of contract to seek punitive damages. We further stated "[t]he UTPA provides that, in addition to punitive damages, a claimant may recover the 'actual damages' which were proximately caused by a UTPA violation." *Lorang*, ¶ 192. Again,

19

we did not require damages beyond those caused by breach of the insurance contract. The fact that we did not require non-contract based damages is significant since virtually every UTPA claim arises from a breach of the insurance contract.

¶52 We do not hold that a party may seek punitive damages under the UTPA absent a showing of compensatory damages. Nor do we hold that an insurer who breaches the insurance contract has necessarily violated the UTPA. Rather, we hold that where an insurer has been found to have violated the UTPA due to delay or refusal to pay benefits in breach of the insurance contract, damages resulting from that violation may be considered compensatory damages under the UTPA for purposes of pursuing punitive damages.

¶53 Because we hold that, when an insurer is found to have violated the UTPA, breach of contract damages can also constitute compensatory damages for that violation, we conclude that the District Court's jury instruction—which required the jury to find UTPA damages beyond damages for denial of benefits and late payments before it could consider the question of actual malice—did not fully and faithfully explain the law. The instruction prejudicially affected the Estate's right to seek punitive damages. We therefore hold that the instruction constituted reversible error.

¶54 The jury in this case found that CULI violated the UPTA, and the court entered a directed verdict in favor of the Estate for $539,717.90. We remand for a new trial on the issue of malice and punitive damages with the instruction that the jury should consider the amount of the directed verdict to constitute damages under the UTPA.

20

¶55    *3. Did the District Court err by failing to direct a verdict against CULI for violating the UTPA?*

¶56    The Estate asks us to reverse the District Court's failure to direct a verdict against CULI for violating the UTPA because CULI denied that Judith's death certificate was sufficient proof of loss for the cancer treatment claims, and because CULI admitted that it erroneously delayed payment on medical and death benefits. We decline to reach this issue, however, because here the jury found that CULI did in fact violate the UTPA and, on remand, the District Court will instruct the jury to that effect.

¶57    *4. Did the District Court err when it did not dismiss the UTPA claim because CULI had a reasonable basis in law for denying the untimely filed claims?*

¶58    Section 33-18-242(5), MCA, provides that an insurer may not be held liable for violating the UTPA if the insurer "had a reasonable basis in law" for contesting the claim. CULI moved for partial summary judgment, arguing that the notice of loss provision in its policy gave it a reasonable basis in law for contesting the claim. The District Court examined the state of Montana law with regards to the notice-prejudice rule at the time CULI made its coverage determination and concluded that the law was unsettled at the time. The court then considered the Estate's contention that CULI acted unreasonably because it made its coverage determination without reference to Montana law and denied the motion, concluding that factual issues remained to be determined at trial.

¶59    The relevant inquiry in determining whether an insurer acted unreasonably under the UTPA is "*how the insurer acted* given the information available to it." *Peterson v. Doctor's Co.*, 2007 MT 264, ¶ 43, 339 Mont. 354, 170 P.3d 459 (emphasis in original).

CULI argues that we must consider the state of Montana law at the time CULI made its coverage determination, and that, because we had not explicitly adopted the notice-prejudice rule when CULI denied the claims, it was reasonable for CULI to rely on the notice of loss provision in the policy in denying coverage to the Estate. In support of this argument, CULI cites *Redies v. Attys. Liab. Prot. Soc'y*, 2007 MT 9, 335 Mont. 233, 150 P.3d 930.

¶60    In *Redies*, we addressed the question of whether a determination of "reasonable basis in law" under § 33-18-242(5), MCA, was an issue of fact or law. In that case, an insurer contested a claim on the basis that it owed no duty to a third party claimant. *Redies*, ¶ 23. We reiterated the general proposition that questions of reasonableness were factual matters properly answered by the finder of fact. *Redies*, ¶ 30. However, we also pointed out that our prior jurisprudence had adopted two exceptions to this rule where the insurer's reasonableness is a question of law for the court to decide. First, we recognized an exception in situations where there was clearly no insurance policy in effect at the time the injury occurred. *Redies*, ¶ 31. Second, we recognized an exception where the insurer's basis in law was grounded on a legal conclusion and no issues of fact remained in dispute. *Redies*, ¶ 32 (citing *Watters v. Guaranty Nat. Ins. Co.*, 2000 MT 150, ¶ 69, 300 Mont. 91, 3 P.3d 626). Under the second exception, we held that the insurer had a reasonable basis in law to deny the claim because Montana law at the time was unsettled and could be reasonably interpreted to support the insurer's denial. *Redies*, ¶¶ 53-58.

¶61    CULI points to this holding as dispositive authority for the proposition that it had a reasonable basis in law for denying the claim, and thus the District Court should have dismissed the UTPA claim as a matter of law. We disagree. We recognize that, despite a trend in our jurisprudence toward adopting the notice-prejudice rule, that point of law remained unsettled when CULI made its coverage decision. However, *Redies* is distinguishable from the instant case in one crucial way. In *Redies*, we upheld the district court's determinations that no facts remained in dispute and that the question of reasonableness hinged solely on whether the insurer's decision to deny the claim was "grounded on a legal conclusion." *Redies*, ¶ 34. We explained that, "[w]hile the assessment of reasonableness generally is within the province of the jury . . . reasonableness is a question of law for the court to determine when it depends *entirely* on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents." *Redies*, ¶ 35 (emphasis added).

¶62    Here, the District Court found that the question of whether CULI had reasonably grounded its denial on a legal conclusion was not entirely a matter of interpreting legal precedents and therefore was an issue of fact for the jury to decide. In denying CULI's motion for summary judgment the court noted that "the propriety of the insurer's action must be based in light of the information possessed by the insurer at the time it adjusted the underlying claim." The court also explained that the Estate had raised questions about whether "the claim here was rejected based on a nationwide policy that had little or nothing to do with considerations of Montana law." At trial both sides presented

23

evidence as to what CULI knew or did not know about Montana law when it denied the claim. The parties introduced evidence ranging from the state of Montana law at the time of denial to whether CULI's claim denial policy was based on informed legal conclusions. Such evidence was proper, because "[t]o determine whether an insurer had 'a reasonable basis in law . . . for contesting the claim or the amount of the claim,' it is necessary first to survey the legal landscape as it existed during the relevant time period." *Redies*, ¶ 29 (quoting § 33-18-242(5), MCA). And, "[t]he legal advice which informed [the insurer's] decision to contest [the] claim is relevant to whether that decision was grounded in 'a reasonable basis in law.'" *Redies*, ¶ 57. The court instructed the jury on the reasonable basis defense and the jury returned a verdict finding that CULI violated the UTPA.

¶63 The District Court correctly applied our holding in *Redies* when it determined that the reasonable basis defense issue in this case was not solely a matter of interpreting legal precedent and allowed the jury to hear evidence about CULI's knowledge and application of Montana law. The District Court did not err when it denied CULI's motion for summary judgment.

¶64 *5. Did the District Court err by applying the statute of limitations from the date the PRs submitted their claim to CULI rather than from the date suit was filed?*

¶65 The statute of limitations for commencing an action on a written contract, including an insurance contract, is eight years from the date the claim accrues. Section 27-2-202(1), MCA. A claim accrues when all elements of the claim have occurred.

Section 27-2-102(1)(a), MCA. An action is commenced when the complaint is filed. Section 27-2-102(1)(b), MCA.

¶66 In applying the statute of limitations to the oldest claims for medical benefits, the District Court calculated the limitation period from the date CULI received Judith's death certificate, April 12, 2010. Under that calculation, any claims accruing prior to April 12, 2002, would be barred by the statute of limitations. CULI maintains that the District Court should have applied the statute of limitations from the date CULI filed its declaratory judgment action in Federal District Court, on June 24, 2011. Calculating from that date would bar all the Estate's claims prior to June 24, 2003. The Estate requests that we affirm the District Court's application of the statute of limitations.

¶67 In its order applying the statute of limitations from April 12, 2011, the District Court correctly noted that a cause of action accrues, and the corresponding statute of limitations begins to run, when "the right to maintain an action on the claim is complete." Section 27-2-102(1)(a)-(2), MCA. However, the court then wrote: "[in briefing, CULI] admits that 'an insurance claim does not accrue . . . until a claim is submitted . . . .' citing *Mont. Petroleum Tank Release Comp. Bd. v. Capitol Indem. Co.*, 2006 MT 133, ¶ 18 . . . *Mont. Petroleum Tank Release Comp. Bd. v. Empire Fire & Marine Ins. Co.*, 2008 MT 195, ¶¶ 20, 24. . . ." Relying on CULI's 'admission,' the court applied the statute of limitations from the date the claim was submitted (i.e., the date CULI received notice of the claim) rather than the date the action was filed.

¶68 A review of the record and our case law reveals the court to be in error. In its briefing before the District Court, CULI stated, "the [Montana Supreme] Court *rejected* the argument that an insurance claim does not accrue . . . until a claim is submitted. . . ." (Emphasis added) (citations omitted). Our case law demonstrates that CULI was, and remains, correct. We have repeatedly stated that the accrual of a cause of action does not depend on when a claim is submitted to an insurer. *Mont. Petroleum Tank Release Comp. Bd. v. Capitol Indemnity*, 2006 MT 133, ¶ 18, 332 Mont. 352, 137 P.3d 522 (*Capitol Indemnity*); *Mont. Petroleum Release Comp. Bd. v. Empire Fire & Marine Ins. Co.*, 2008 MT 195, ¶¶ 20, 24, 344 Mont. 54, 185 P.3d 1021 (*Empire Fire*). Rather, a claim accrues when all elements of that claim have occurred. Section 27-2-102(1)(a), MCA; *Capitol Indemnity*, ¶ 18; *Empire Fire*, ¶¶ 20, 24. In this case, a claim accrued for each medical treatment when the treatment occurred and Judith incurred the costs associated with that treatment.

¶69 CULI filed its declaratory judgment action on June 24, 2011. Thus under the eight year statute of limitations for contract claims, any claims that accrued prior to June 24, 2003, are barred by the statute of limitations. On remand the District Court should amend the judgment against CULI to reflect this calculation.

¶70 As a final matter, the Estate argues that we should adopt an equitable tolling doctrine in first party insurance cases that would toll the statute of limitations during the period after the insurer has received notice of the claim until formal denial is provided to

the insured.[1] However, the Estate, in its opening brief, did not request that we reverse the District Court and apply an equitable tolling doctrine with regard to the statute of limitations issue. Despite substantial discussion of the issue in front of the District Court, before this Court the Estate only raised the issue in answer to CULI's cross-appeal requesting us to apply the statute of limitations as we do now. We will not reach an issue of such importance to our insurance jurisprudence without complete briefing on the issue by the parties. Therefore, without precluding our application of a first party insurance equitable tolling doctrine in the future, we decline to consider the issue here.

¶71    *6.  Did the District Court err in allowing the Estate to present evidence of out-of-state law and claim handling practices that were not directly related to the case at hand and allowing CULI to present evidence of Montana cases related to the notice-prejudice rule?*

¶72    The Estate argues that the District Court erred in allowing CULI to present evidence of Montana judicial opinions related to the notice-prejudice rule. CULI counters that the District Court erred by allowing the Estate to present evidence of laws from other jurisdictions, evidence of unrelated actions against CULI, and evidence of claim handling practices of other insurers.

¶73    As discussed in ¶¶ 54-59 above, CULI relied on the reasonable basis in law affirmative defense provided in § 33-18-242(5), MCA, to avoid liability under the UTPA. As part of its affirmative defense, CULI presented evidence of Montana judicial opinions

---

[1] *See, e.g., Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 267 A.2d 498 (1970); *Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d 674, 798 P.2d 1230 (1990); *Guam Housing & Urban Renewal Auth. v. Dongbu Ins. Co.*, 2001 Guam 24; Leonard J. Feldman et al, *The Equitable Tolling Doctrine in First Party Insurance Coverage Matters; Analysis, Benefits, and an Illustrative Case Study*, 41 Tort Trial and Ins. Practice L.J. 61 (Fall, 2005).

tending to show the unsettled nature of Montana law with regard to the notice-prejudice rule. CULI attempted to demonstrate that its denial of the Estate's claim was reasonable because Montana law did not prohibit it from denying the Estate's claim based on late notice.

¶74 In arguing to the contrary, the Estate presented evidence that CULI disregarded the laws of Montana and other states and comparative evidence of CULI's and other insurers' claim handling practices to show that CULI did not have a reasonable basis to deny the Estate's claims.

¶75 Montana R. Evid. 401 provides that evidence is relevant if it "[has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As demonstrated by our analysis in *Redies*, an insurer's actual knowledge of the law and whether the insurer relied upon a reasonable conclusion of law in denying a claim are both relevant to the question of whether the insurer had a reasonable basis defense to the UTPA. *Redies*, ¶ 57. It stands to reason that, in order to demonstrate that it had a reasonable basis in law for denying a claim, an insurer should be able to present evidence as to the state of the law when the denial was made. The insured, on the other hand, should be allowed to present evidence of the insurer's actual knowledge of the law and whether it reasonably relied on that knowledge in denying the claim.

¶76 Here, the District Court fairly allowed both sides to present legal and factual evidence relevant to CULI's reasonable basis defense. The District Court exercised its

judgment within the bounds of reason. We hold that the District Court properly exercised its discretion in allowing CULI to present evidence of cases addressing the notice-prejudice rule that were decided after CULI denied the Estate's claim. Those cases demonstrated the unsettled nature of Montana law with regard to the notice-prejudice rule at the time CULI denied the Estate's claim. We further hold that the District Court properly exercised its discretion in allowing the Estate to present evidence of how CULI and other insurers handle untimely filed claims in other states. That evidence was relevant in order to refute CULI's affirmative defense that it had a reasonable basis for denying the Estate's claims. We affirm the District Court on this issue.

¶77   *7. Did the District Court err in awarding trial costs to CULI where the jury found that the UTPA was violated and the court entered a directed verdict in favor of the Estate?*

¶78   A plaintiff is entitled to costs in an action for the recovery of money or damages where the judgment is in the plaintiff's favor and the plaintiff recovers over $50. Section 25-10-101(3), MCA. Conversely, when judgment is in the defendant's favor costs must be allowed to the defendant. Section 25-10-102, MCA. Here, the District Court granted costs to CULI, reasoning that because the jury awarded no damages to the Estate, CULI was the prevailing party.

¶79   We held above that the District Court erred by preventing the jury from reaching the question of malice and we ordered the case remanded for a new trial on that issue. Accordingly, we reverse the award of trial costs to CULI.

¶80    *8. Did the District Court err in awarding attorneys' fees to the Estate?*

¶81    The District Court awarded the Estate attorney's fees and costs based on the contractual damages awarded in the directed verdict on the first day of trial. "Montana follows the American Rule regarding attorney fees where each party is ordinarily required to bear his or her own expenses absent a contractual or statutory provision to the contrary. However, there are several equitable exceptions to this rule." *Winter v. State Farm*, 2014 MT 168, ¶ 31, 375 Mont. 351, 328 P.3d 665 (citing *Mt. W. Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶ 14, 315 Mont. 231, 69 P.3d 652). One of the exceptions to the American Rule is the "insurance exception" which allows an insured to recover attorney's fees when she is forced to resort to legal action against the insurer to obtain the full benefit of the insurance contract. *Winter*, ¶ 31.

¶82    The situation before us falls squarely within the insurance exception to the American Rule. Having been forced to pursue legal action to obtain the full benefit of the insurance contract, the Estate prevailed in recovering more than $500,000. The Estate is entitled to attorney's fees on its action against CULI.

¶83    CULI cites *Sampson v. Nat'l Farmers Union*, 2006 MT 241, 333 Mont. 541, 144 P.3d 797, for the proposition that attorney's fees may not be awarded in UTPA actions. CULI misstates our holding in *Sampson*. *Sampson* involved the question of whether attorney's fees could be awarded *as damages* in a UTPA action. We looked to the construction of the UTPA and concluded that, because the legislature had not seen fit to construct the UTPA to provide for the recovery of attorney's fees, such fees were not

30

allowed as damages in a UTPA action. *Sampson*, ¶ 22. *See also Jacobsen*, ¶¶ 18-24. However, we also restated our commitment to the insurance exception of the American Rule. *Sampson*, ¶ 19. The insurance exception did not apply in *Sampson*, because the prevailing party was not the insured. It applies to the Estate in this case.

¶84 The District Court's award of fees and costs to the Estate is affirmed.

CONCLUSION

¶85 With our opinion today we affirm the District Court's application of the notice-prejudice rule and formally adopt the notice-prejudice rule in first party insurance cases. We remand for a new trial on the issue of malice and punitive damages in accordance with our holding that, when an insurer is found to have violated the UTPA, a jury is not required to find compensatory damages beyond those for breach of the insurance contract before considering malice and punitive damages under the UTPA.

¶86 We affirm the District Court's refusal to dismiss the UTPA claim on the issue of whether CULI had a reasonable basis in law to deny the claim. We remand for the District Court to amend its order applying the statute of limitations consistent with our opinion here. We reverse the District Court's order awarding trial costs to CULI. We affirm the court's award of costs and attorney's fees to the Estate.

¶87 Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

/S/ MICHAEL E WHEAT

31

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER


Justice Laurie McKinnon, concurring in part and dissenting in part.

¶88 I agree with our adoption of the notice-prejudice rule, but would do so pursuant to a different analysis. I am uncomfortable when we set forth a new rule which does not provide adequate guidance or rationale to insureds and insurers in the handling of insurance claims. Additionally, after examining our precedent regarding the notice-prejudice rule, I am convinced our conclusion that CULI did not have a reasonable basis in law to deny the untimely claims is contrary to our holdings in *Redies v. Attorneys Liability Protection Society*, 2007 MT 9, 335 Mont. 233, 150 P.3d 930, *Shilhanek v. D-2 Trucking*, 2003 MT 122, 315 Mont. 519, 70 P.3d 721, and *Watters v. Guaranty National Insurance Co.*, 2000 MT 150, 300 Mont. 91, 3 P.3d 626, *overruled in part on other grounds by Shilhanek*, ¶ 21. Despite a valid contract, the direction of *Steadele v. Colony Insurance Co.*, 2011 MT 208, 361 Mont. 459, 260 P.3d 145, and the "legal landscape" supporting CULI's denial of benefits, we have mistakenly interjected questions of fact into what otherwise is a legal conclusion regarding our precedent. More importantly, we are requiring CULI to prove reliance on a legal theory that would have *supported* payment of the claim, rather than provided a basis to *deny* the claim. CULI did have a reasonable basis in law to contest the claim—reliance upon the express terms of the

32

insurance contract—and did, in fact, rely upon the contract provision requiring that a claim be presented within 90 days.

¶89 Further, in my opinion, it is improper to award the Estate attorney fees for the jury trial of their UTPA claim. I would remand to the District Court for a determination of those fees and costs attributable to litigation of the contractual claim, both at trial and on appeal. In writing separately to address these concerns, I explain first the development of the notice-prejudice rule in the context of the reasonable basis in law defense to a UTPA claim, and second, my concerns regarding attorney fees. Finally, I will address the damages necessary to support an independent UTPA action.

**Reasonable Basis in Law**

¶90 The Estate maintained that CULI's denial of untimely filed claims was a violation of § 33-18-201(6), MCA, which provides:

> **Unfair claim settlement practices prohibited.** A person may not, with such frequency as to indicate a general business practice, do any of the following:
> .    .    .
> (6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear . . . .

CULI moved for summary judgment on an affirmative defense of reasonable basis in law. Pursuant to § 33-18-242(5), MCA, "[a]n insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." The District Court, in denying CULI's motion, explained:

The result of this review of Montana law on the topic shows the existence of no clear rule. One could argue that prior to this Court's decision, the no prejudice rule only in Montana applied in underinsured and uninsured motorist coverage claims.

While this Court was happy to impose the no prejudice rule in cases such as this, it certainly cannot agree with a contention that the law in Montana was clear on the subject. Thus, the Court must use this background in deciding the present motion for summary judgment.

The major problem with Central United's motion is that the propriety of the insurer's action must be based in light of the information possessed by the insurer at the time it adjusted the underlying claim. Here, it appears that Central United had no reference to Montana law. The Court does not expect the claims adjusters to have extensive legal training, however it does appear that the claim here was rejected based on a nationwide policy that had little or nothing to do with considerations of Montana law. It is that policy that we must examine at trial to determine if Central United's actions were reasonable.

¶91 The Court adopts the District Court's reasoning concluding that reasonable basis in law is an issue to be determined by the trier of fact. In doing so, we essentially conclude that although we adopt a new rule of law today, Opinion, ¶ 39, CULI's failure to nevertheless rely upon that legal theory, *which would require payment of the claim*, defeats its reasonable basis in law defense. At best, this confuses the distinction maintained in the statute between law and fact ("reasonable basis in law *or* fact," § 33-18-242(5), MCA (emphasis added)); at worst, it simply makes no sense. As CULI argues, this is akin to issuing a citation to a motorist driving *within* the legal speed limit because she may not have known the exact speed limit when stopped. It also overlooks that CULI's reasonable basis in law defense was premised upon the unambiguous terms of the insurance contract and not the precedent from this Court establishing notice as a condition precedent to coverage.

¶92 An insurer asserting the defense of reasonable basis in law has the burden of establishing the defense by a preponderance of the evidence. *Redies*, ¶ 28 (citing *Watters*, ¶¶ 65, 67). The first step in determining whether an insurer has a reasonable basis in law to contest a claim is to "survey the legal landscape as it existed during the relevant time period." *Redies*, ¶ 29 (citing *Shilhanek*, ¶¶ 24-31). Next, from this perspective, the inquiry becomes whether there was a reasonable basis in law for the insurer to contest the claims. It is important to distinguish, which I believe our precedent and this Court today fail to do, between the affirmative defense of reasonable basis in law set forth in § 33-18-242(5), MCA, and the specific violation of the UTPA set forth in § 33-18-201(4), MCA, requiring that the insurer conduct "a reasonable investigation based upon all available information." The former allows for a legal defense available at the time the claim was handled that would be reasonable to pursue. In contrast, a claim under § 33-18-201(4), MCA, examines the information available to the insurer to determine whether it has acted unreasonably in adjusting the claim.

¶93 We have, on occasion, construed the reasonable basis in law defense and attempted to draw a distinction between whether the issue presents a question of fact or a question of law. Our earlier cases dealt primarily with determinations that were factually driven, as compared to legal defenses, and we explained generally that these factual questions are to be resolved by the trier of fact. In *Dean v. Austin Mutual Insurance Co.*, 263 Mont. 386, 389, 869 P.2d 256, 258 (1994), for example, we held that it was for the trier of fact to "weigh the evidence and judge the credibility of the witnesses" in

35

determining whether the insurer had a reasonable basis for denying a claim pending the outcome of a criminal trial. *See also Dees v. Am. Natl. Fire Ins. Co.*, 260 Mont. 431, 441-42, 861 P.2d 141, 147-48 (1993).

¶94 We modified the *Dean* trier of fact rule in *Watts v. Westland Farm Mutual Insurance Co.*, 271 Mont. 256, 263, 895 P.2d 626, 630 (1995) and *Bartlett v. Allstate Insurance Co.*, 280 Mont. 63, 70, 929 P.2d 227, 231 (1996). In *Watts*, 271 Mont. at 263, 895 P.2d at 630, we affirmed the district court's order granting summary judgment for Westland and held that, as a matter of law, a binder that temporarily insured a cantaloupe crop was not in effect at the time of a hailstorm and that there was a reasonable basis for contesting the insured's claim. We similarly concluded in *Bartlett*, 280 Mont. at 70, 929 P.2d at 231, that the district court did not err in granting summary judgment to the insurer where the insured did not have an insurable interest in the property.

¶95 It was not until *Watters* that we dealt with a reasonable basis in law defense premised upon unclear legal precedent. In *Watters*, ¶¶ 31-42, this Court had to reconcile conflicting precedent regarding whether a "settlement" for policy limits was legally possible without the insured executing a release. We held that "a plain reading of the available case law at the time gave Guaranty a reasonable basis in law upon which it could deny payment of the policy limits" and that, "at the time this dispute arose, *Juedeman* [*v. National Farmers Union Property & Casualty Co.*, 253 Mont. 278, 833 P.2d 191 (1992)] was the lone precedent" providing a reasonable basis in law to contest the amount of the claim. *Watters*, ¶¶ 71-72. We explained that

36

the "trier of fact" rule set forth in *Dean* is not necessary in a summary judgment proceeding where the underlying "basis in law" is grounded on a legal conclusion, and no issues of fact remain in dispute. Here, therefore, it is for the court, not the trier of fact, to determine whether our holding in *Juedeman* sufficiently provides an absolute defense as a matter of law in this instance.

We revisited the *Watters* analysis in *Shilhanek*, ¶ 30, where we held that D-2 Trucking's insurer, Canal Insurance Company, because it made its offer of settlement prior to our decision in *Watters*, "had an arguably reasonable basis in law" for conditioning its payment of policy limits on obtaining a release, and "[could] not be held liable for acting in bad faith . . . ." We affirmed the district court's grant of summary judgment to Canal. *Shilhanek*, ¶ 31.

¶96    Our most recent pronouncement on the reasonable basis in law defense came in *Redies*. We again tried to clarify the distinction between reasonable basis in law and reasonable basis in fact and explained that "reasonableness is a question of law for the court to determine when it depends entirely on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents." *Redies*, ¶ 35. Our conclusion was consistent both with the fundamental principle that a jury does not decide the law and our obligation to honor the clear language of § 33-18-242(5), MCA ("An insurer may not be held liable under this section if the insurer had a reasonable basis *in law* . . . for contesting the claim." (emphasis added)).

¶97    Turning then to the relevant "legal landscape," *Redies*, ¶ 29, this Court must examine whether CULI had a reasonable basis in law to deny the Estate's claim. Important to answering this question is how the question is actually framed. CULI

represented that they denied benefits to the Estate based upon the terms of the contract requiring a claim for benefits to be submitted within 90 days of the insured's loss. Neither party disputes the validity or requirements of this notice provision. The Estate, however, asks that it be relieved from this obligation because CULI has not suffered any prejudice as a result of the late notice. CULI maintains that it relied upon the terms of the contract in denying coverage. Thus, the real question is whether it was unreasonable for CULI to rely on the terms of the contract; or, more to the point, whether Montana legal precedent established a notice-prejudice rule for the payment of untimely benefits which made it unreasonable for an insurer to rely on a specific limitations provision of the insurance contract to deny a claim. Although the formal adoption of a notice-prejudice rule for the first time today, Opinion ¶ 39, clearly establishes that an insurer may be required to pay an untimely filed claim in the absence of prejudice, I will nevertheless examine our precedent to demonstrate that at the time the Estate's claims were submitted, CULI had a reasonable basis in law to rely on the terms of its contract.

¶98    The most recent and binding authority regarding the notice-prejudice rule comes from our recent decision in *Steadele*. We observed in *Steadele* that notice provisions in insurance policies have been considered a "condition precedent" and requirement of the policy from as far back as 1925. *Steadele*, ¶ 22 (citing *La Bonte v. Mutual Fire & Lightning Ins. Co.*, 75 Mont. 1, 12, 241 P. 631, 635 (1925) (notice requirement in an insurance policy "is a condition precedent, and failure to comply therewith will bar a recovery under the policy, unless the condition is waived by the company") and *Riefflin*

38

*v. Hartford Steam Boiler Inspection & Ins. Co.*, 164 Mont. 287, 293, 521 P.2d 675, 678 (1974) ("failure of the [insureds] to submit notifications of accident and proof of loss as soon as practicable, as required by the policy, barred any claims for reimbursement . . .")). Based upon the language of the insurance contract, we concluded there was no dispute that the Steadeles had not complied with the provisions requiring timely notice, and therefore, they could not bring a suit against the insurer unless all provisions of the policy's terms had been complied with. *Steadele*, ¶¶ 23-27. In my opinion, *Steadele* undisputedly provides CULI with a reasonable basis in law to deny the Estate's claims for violation of the contract's notice provisions.

¶99 Nevertheless, the Court relies upon *Sorensen v. Farmer's Insurance Exchange*, 279 Mont. 291, 927 P.2d 1002 (1996), *Augustine v. Simonson*, 283 Mont. 259, 940 P.2d 116 (1997), and *Lee v. Great Divide Insurance Co.*, 2008 MT 80, 342 Mont. 147, 182 P.3d 41, to support its claim that we have a "longstanding inclination to require an insurer to establish prejudice by late notice of a claim before we will enforce the coinciding exclusion." Opinion, ¶ 29. I have a serious problem with holding a party accountable for nearly $1 million (including benefits, attorney fees and costs) based upon an "inclination." Moreover, all of the cases cited as authority by the Court involved uninsured or underinsured motorist policies with different public interest concerns than a general liability policy. In *Lee*, ¶ 21, which involved a claim of uninsured motorist coverage, we concluded that there was untimely notice and a material breach of the policy's notice requirements that was sufficient to deny coverage. While the Court

characterizes this as an "unstated possibility that a lack of prejudice could have compelled a different result," Opinion, ¶ 29, we clearly stated that Lee's policy expressly required that he provide notice and that the failure to do so constituted a material breach, *Lee*, ¶ 21. We held in *Lee*, ¶ 21, that "[t]hese omissions were a material breach of Lee's policy and are independently sufficient to deny coverage to Lee."

¶100 The Court's reliance on cases involving uninsured and underinsured motorists to establish exceptions to a term of the contract imposing time limitations is similarly misplaced. The notice-prejudice rule in *Sorensen* was limited to a claim filed by an underinsured motorist and explained that, in addition to there being no prejudice to the insured, "[t]he purpose of underinsured motorist insurance is to provide a source of indemnification for accident victims when the tortfeasor does not provide adequate indemnification." *Sorensen*, 279 Mont. at 295-96, 927 P.2d at 1005. Such a purpose and objective does not exist in a first-party contract for insurance. Additionally, *Augustine*, 283 Mont. at 264, 940 P.2d at 119, which the Court cites for an unknown proposition, Opinion, ¶¶ 27-28, dealt with an exhaustion clause in an underinsurance policy and whether it was enforceable as a matter of public policy. I am not sure what this provides to the analysis regarding notice provisions contained within first-party contracts.

¶101 In my opinion, *Steadele* clearly establishes that CULI had a reasonable basis in law to contest payment of the Estate's untimely benefits and that no definitive authority to the contrary existed within the "legal landscape." Nevertheless, within the context of the above-referenced authority, we must also consider the equally well-established

principle that if a contract's terms are clear and unambiguous, the contract language will be enforced. Section 28-3-401, MCA; *Youngblood v. Am. States Ins. Co.*, 262 Mont. 391, 395, 866 P.2d 203, 205 (1993); *Keller v. Dooling*, 248 Mont. 535, 539, 813 P.2d 437, 440 (1991). This Court has held that the only exception to enforcing an unambiguous contract is if the disputed term violates public policy or is against good morals. Section 28-2-701, MCA; *Youngblood*, 262 Mont. at 395, 866 P.2d at 205; *Amsterdam Lumber, Inc. v. Dysterhouse*, 179 Mont. 133, 140, 586 P.2d 705, 709 (1978). Prior to today, there was no definitive authority in this State indicating that enforcement of a limitations period to bar an untimely claim was against public policy unless the insurer demonstrated prejudice.

¶102 As a final comment, I believe we do a great disservice to the legal community and public when we mischaracterize our legal precedent in order to support a new position that the Court is considering. *Steadele*, after examining nearly 100 years of precedent, clearly stated that a notice requirement in an insurance policy is a condition precedent to coverage. *Steadele*, ¶ 22. *Steadele* has been relied upon by not only CULI, but other courts to deny untimely claims. *Atl. Cas. Ins. Co. v. GTL, Inc.*, 915 F. Supp. 2d 1169, 1176 (D. Mont. 2013) ("The more recent and pertinent binding authority [*Steadele*] is contrary to the argument and authority of Defendants' prejudice claims, which are without merit."). I have no problem with examining the propriety of adopting a new rule of law; however, I do take issue with our mischaracterization of precedent in order to say we have always been "inclin[ed]," Opinion, ¶ 29, or predisposed "without explicitly

adopting," Opinion, ¶ 23, as if we have always applied the notice-prejudice rule. Our precedent did not support a notice-prejudice exception to the timely filing of claims, and CULI had a reasonable basis in law to deny the untimely claims presented by the Estate.

¶103 With the foregoing in mind, I would conclude that the District Court erred in denying CULI's motion for summary judgment on CULI's reasonable basis in law defense. CULI's reasonable basis in law defense was improperly submitted to a jury for resolution as a question of fact, when it clearly required a legal conclusion for a court to decide. Our legal precedent establishes, as a matter of law, that CULI had a reasonable basis to deny the Estate's untimely benefits based upon the clear and unambiguous terms of the contract's notice requirements. CULI was not required to show reliance on an exception to the notice requirements—not adopted by this Court—which advocated the Estate's theory for *paying* benefits. It was improper to require CULI to demonstrate that it considered and relied upon legal theories that would *support* the payment of claims; rather, CULI had to demonstrate it had a reasonable basis in law to *deny* the payment of claims. In the absence of precedent adopting a notice-prejudice rule, CULI's reasonable basis in law to deny the untimely claims was the insurance contract itself. Having concluded that CULI had a reasonable basis in law to deny the claims, I now set forth the legal analysis I believe appropriate for our adoption of the notice-prejudice rule.

**Notice-Prejudice Rule**

¶104 Montana, like most states, recognizes the validity of conditions precedent for insurance coverage. We have repeatedly stated that courts should construe an insurance

42

contract in the same manner as any other contract. *Monroe v. Cogswell Agency*, 2010 MT 134, ¶ 15, 356 Mont. 417, 234 P.3d 79 (citing *Stutzman v. Safeco Ins. Co. of Am.*, 284 Mont. 372, 376, 945 P.2d 32, 34 (1997)); *Conlon v. N. Life Ins. Co.*, 108 Mont. 473, 498, 92 P.2d 284, 296 (1939). Moreover, it is the court's duty to enforce contracts according to their plain terms and the court may not create a new contract for the parties. *Monroe*, ¶ 15; *Estate of Irvine v. Oaas*, 2013 MT 271, ¶ 14, 372 Mont. 49, 309 P.3d 986. Regarding notice requirements, the result of this traditional approach has often been that the insurer was relieved of liability which might otherwise be imposed. Nevertheless, consistent with this traditional common law approach, this Court stated in *Steadele*, ¶ 22, that notice was a condition precedent to recovery under the policy.

¶105   In support of today's decision to depart from the strict contractual approach of our past decisions, I would offer several reasons. I am happy to see that some of my rationale has been adopted by the Court, but I will nevertheless set forth my complete analysis. First, general principles of contract law concerning partial or immaterial breach support adoption of a notice-prejudice rule. The Restatement (Second) of Contracts provides for continued performance of a contract in cases when non-occurrence of a condition would cause a disproportionate windfall, stating: "To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." Restatement (Second) of Contracts § 229 (1979). A comment to this section elaborates this principle:

43

> In determining whether the forfeiture is "disproportionate," a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture. The character of the agreement may, as in the case of insurance agreements, affect the rigor with which the requirement is applied.

Restatement (Second) of Contracts § 229 cmt. b. Thus, a party is excused from failure to perform a condition in the contract if an inequitable forfeiture would occur. However, the court can only excuse performance of the condition if the condition was not a material part of the contract. Hence, the notice-prejudice rule is an application of this principle by excusing the non-performance of a procedural or non-material term of the contract. The requirement of no prejudice ensures that notice is an immaterial condition. Our precedent establishes that we have excused a condition of forfeiture where to give it effect would have arbitrarily resulted in a windfall to the other party. *See Quigley v. Acker*, 1998 MT 72, ¶ 39, 288 Mont. 190, 955 P.2d 1377. Additionally, as set forth in ¶¶ 30-34 of our Opinion, these principles of partial or immaterial breach accord with Montana's anti-forfeiture laws.

¶106 Another reason for adoption of the notice-prejudice rule is that there is no justification for defeating coverage when the purpose behind the notice condition is lacking. The requirement of notice of an accident or loss within a certain period of time is to give the insurer an opportunity to acquire, through an adequate investigation, full information about the circumstances of the case, on the basis of which it can proceed through disposition, either through settlement or defense of the claim. 8 John Alan

44

Appleman & Jean Appleman, *Insurance Law and Practice* § 4731, 2-5 (rev. ed. 1981).

The purpose of the notice provisions has been described as follows:

> The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim, is to give the insurer an opportunity to make a timely and adequate investigation of all circumstances. An adequate investigation often cannot be made where notice is long delayed, because of the possible removal or lapse of memory on the part of witnesses, the loss of opportunity for examination of the physical surroundings and making of photographs thereof for use at trial, and the possible operation of fraud, collusion, or cupidity. Such a requirement tends to protect the insurer against fraudulent claims, and also against invalid claims made in good faith. And further, if the insurer is thus given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation.

Appleman & Appleman, *supra*, § 4731, at 2-5.

¶107 Prompt notice clauses therefore serve a significant purpose and cannot be merely regarded as serving the competing interests between the particular insured and insurer. The interests of the public generally may be better served by early and prompt investigation, which reduces the risk of successful fraudulent claims and reduces the cost of premiums by shortening the period and degree of uncertainty concerning the number of claims and their amounts. *See* Robert E. Keeton & Alan I. Widiss, *Insurance Law—A Guide to Fundamental Principles*, *Legal Doctrines and Commercial Practices* § 7.2(a), 749-52 (1988). Therefore, where the function and purpose of the notice provision has not been frustrated by the insured—i.e., where there is no prejudice—the reason behind the notice condition in the policy is lacking. In these cases, the notice clause should not serve as a technical basis for the insurer to escape liability.

¶108 A third reason for departing from the strict traditional approach is that it ignores the nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather, its conditions are by and large dictated by the insurance company to the insured. *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 42, 354 Mont. 15, 221 P.3d 666; *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 196 (Pa. 1976). The only aspect of the conditions of an insurance policy the insured can bargain for is the monetary amount of the coverage. This court has recognized the unequal bargaining power of the parties to an insurance policy and observed that they are contracts of adhesion. *Giacomelli*, ¶ 42. Hence, a proper analysis of whether to enforce a notice condition requires that the unequal relationship between the parties be considered.

¶109 Lastly, courts that have adopted the notice-prejudice rule have recognized the public interest in enforcing insurance contracts to further the goal of compensating tort victims. A significant point to observe, however, is that these public policy arguments have been made in the context of uninsured and underinsured motorist coverage where the legislature has enacted specific statutes to protect against financial loss visited upon innocent traffic accident victims by negligent motorists. *See* § 33-23-201, MCA. By enacting these statutes, the Montana legislature specifically sought to avoid inadequate compensation to victims of automobile accidents. To defeat this purpose by enforcing arbitrarily a forfeiture condition in an insurance contract would frustrate the policy as declared by the legislature.

¶110 The Court states that the public policy of Montana is that a policy provision that defeats coverage for which valuable consideration has been received should not be enforced. Opinion, ¶ 24. In *State Farm Mutual Automobile Insurance Co. v. Gibson*, 2007 MT 153, ¶ 22, 337 Mont. 509, 163 P.3d 387, which the Court cites for this public policy proposition, we extended the public policy considerations underlying uninsured and underinsured motorist coverage articulated in *Hardy v. Progressive Specialty Insurance Co.*, 2003 MT 85, ¶ 21, 315 Mont. 107, 67 P.3d 892, and *Bennett v. State Farm Mutual Automobile Insurance Co.*, 261 Mont. 386, 389, 862 P.2d 1146, 1148 (1993), to address the stacking of medical payments coverage. The public policy, however, underlying a statutory provision requiring uninsured motorist coverage, *see* § 33-23-201, MCA, does not necessarily extend to a contract's provisions dealing with notice. The requirement of notice also serves important public interest considerations. In my opinion, it is normally more appropriate for the legislature to express the public policy of Montana through the enactment of statutes. Were it not for the other considerations which are consistent with contract principles and forfeiture, I would find it difficult to alter the terms of a contract, the enforcement of which is equally supported by public policy, absent more specific legislative direction. Indeed, an argument can be made that the policy considerations of compensating innocent tort victims for injuries caused by uninsured motorists are not implicated with general liability policies because general liability policies are not mandated by the legislature and are voluntarily purchased. Moreover, many state courts that have articulated the merits of the notice-

prejudice rule have done so in the face of legislative enactments adopting the rule and announcing the public policy of the state to require an insurer to show prejudice before disclaiming coverage. *See Prince George's Cnty. v. Local Govt. Ins. Trust*, 879 A.2d 81, 96 (Md. 2005).

¶111  In spite of our primary reference to public policy of the state as a justification for the notice-prejudice rule, I would, based on the foregoing analysis, join the overwhelming majority of states[1] and adopt a notice-prejudice rule in first-party insurance contracts, consistent with principles of forfeiture and immaterial or partial breach.  I would evaluate prejudice in the context of the interests notice provisions are designed to protect, as explained above.  There remains, however, the question of how to incorporate the consideration of prejudice into our analysis.

¶112   States that consider prejudice usually follow one of three different approaches: (1) once it is shown that the insured has breached the notice provision, the contract is nevertheless effective unless the insurer has shown that it has been prejudiced by the delay; (2) once it is shown that the insured has breached the notice provision, a rebuttable presumption exists that the insurer has been prejudiced by the delay; or (3) prejudice is considered as a factor in the initial inquiry of whether the insured has provided timely notice. *See Alcazar v. Hayes*, 982 S.W.2d 845, 853 (Tenn. 1998); Russ & Segalla, *supra*, § 193:25; Marvel, *supra*, §§ 3-5.

---

[1] *See* 13 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 193:25 (3d ed. 2005); Charles C. Marvel, Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R. 4th 141, §§ 3-5 (1984 & Supp. 2014).

¶113 While I can appreciate the rationale that it is the insured that is seeking to be excused from terms of a contract provision, I would nevertheless require that the insurer bear the burden of demonstrating prejudice. I believe this is the better-reasoned approach and one that will more effectively handle incorporation of the rule. The prevailing view among states incorporating prejudice is that once it is demonstrated that the insured breached the notice provision, the burden of proof is allocated to the insurer to prove it has been prejudiced by the breach. There are several justifications for imposing the burden on the insurer. First, it is very difficult for the insured to prove a negative and hence difficult or impossible to prove no prejudice. Second, the insurer is in a better position to know the facts that would substantiate prejudice. *See Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 231 (Colo. 2001). Third, it is the insurance company that is choosing to disclaim its obligations under the policy. *Brakeman*, 371 A.2d at 198.

¶114 Lest my decision be perceived as encouraging dilatory tactics on the part of the insured or as unfair to the insurer, I would impose a requirement that the insured, for the period of delay beyond the limits of timeliness, show that he or she was acting in good faith and that the delay was not purposeful. Equity dictates that a bad-faith delay in notifying an insurer, even though no material prejudice results, should be considered when deciding whether the policy should be enforced. *See Great Am. Ins. Co. v. C. G. Tate Constr. Co.*, 279 S.E.2d 769, 776 (N.C. 1981). Moreover, implicit in every contract is the requirement that the parties act in good faith. *Story v. Bozeman*, 242 Mont. 436,

450, 791 P.2d 767, 775 (1990), *overruled in part on other grounds by Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 54, 318 Mont. 103, 79 P.3d 250.

¶115   Therefore, I would adopt a two-step process for the evaluation of untimely claims. This approach would require a preliminary determination of whether the insured's notice was timely.  Such a determination should include an evaluation of the reasonableness of the delay which would incorporate the insured's reasons and the existence of good faith. Once a court determines that an insured's notice was untimely, and that the delay was unreasonable, it should then turn to the issue of whether the insured was prejudiced by such untimely notice. Such an approach is in accord with the majority of jurisdictions. *See Clementi*, 16 P.3d at 231; *Ouellette v. Maine Bonding & Cas. Co.*, 495 A.2d 1232, 1234 (Me. 1985); *State Farm Mut. Auto. Ins. Co. v. Gregorie*, 748 A.2d 1089, 1093 (Md. Ct. Spec. App. 2000); *Am. Cont'l Ins. Co. v. Phico Ins. Co.*, 512 S.E.2d 490, 494 (N.C. Ct. App. 1999); *Brakeman*, 371 A.2d at 196.

¶116   Lastly, there may be a limited exception to the notice-prejudice rule allowing that insurer prejudice will be presumed as a matter of law when an insured fails to notify the insurer of a pending lawsuit against him until after a default judgment has been entered. *See Campbell v. Cont'l Cas. Co. of Chicago*, 170 F.2d 669, 673 (8th Cir. 1948); *Prince George's Cnty.*, 879 A.2d at 85-86; *Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 466 (Tex. Ct. App. 1991).  Normally, under the default exception to the notice-prejudice rule,

prejudice is presumed to be present even though, for example, the insurer has the option of filing for a new trial. *Branscum*, 803 S.W.2d at 466.[2]

¶117  We adopt a new rule today that arguably conflicts with our prior jurisprudence and departs from our traditionally strict interpretation of insurance contracts.  A notice-prejudice rule will significantly alter the handling of insurance claims in this State. I therefore believe it is important to properly set forth the analysis upon which I have arrived at my decision.  In order to assist in the handling of these claims, I have discussed how prejudice is to be incorporated into the burden of proof.  In these proceedings, CULI has admitted they have not suffered any prejudice by the insured's late filing of claims.  I would therefore affirm the directed verdict entered by the District Court on the untimely filed claims.

**Attorney Fees for the Estate**

¶118  Contrary to our characterization today of *Sampson v. National Farmers Union Property & Casualty Co.*, 2006 MT 241, 333 Mont. 541, 144 P.3d 797, it is my opinion that this Court has definitively held that attorney fees are not recoverable in a UTPA action. *Sampson*, ¶ 22; *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 23, 351 Mont. 464, 215 P.3d 649.  Pursuant to the insurance exception to the American Rule, if a party prevails on their contractual claims, they are entitled to attorney fees incurred in obtaining those benefits. *Mountain W. Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT

---

[2] There is a third exception to the notice-prejudice rule observed by several courts.  This concerns "claims-made" policies as contrasted with policies based upon "occurrence."  Applying the notice-prejudice rule to a claims-made policy would essentially convert it, so the rationale goes, into an occurrence policy.

98, ¶ 14, 315 Mont. 231, 69 P.3d 652. The Estate is entitled to recover their attorney fees on the contractual damages awarded by the District Court in its directed verdict.

¶119 In *Sampson*, ¶ 15, we restated the general rule in Montana "that a party is not entitled to attorney's fees absent a specific contractual provision or statutory grant." We further held in *Sampson* that "[t]he Legislature is capable of authoring and enacting statutes which clearly permit tort victims to recover attorney fees." *Sampson*, ¶ 21. We next held that, "[t]his being so, we will not engage in a presumption that the Legislature intended fees as an element of damages but simply neglected to so specify." *Sampson*, ¶ 21.

¶120 I do not think *Sampson* could be any clearer. Moreover, other courts have relied on our rule stated in *Sampson* that attorney fees are not recoverable in a UTPA action. *See Davis v. Progressive Cas. Ins. Co.*, 220 Fed. Appx. 708, 712 (9th Cir. 2007) ("because attorney's fees are not recoverable under the UTPA, the district court did not abuse its discretion in denying Davis's request for attorney's fees") (citing *Sampson*); *Colman Constr., Inc. v. Diamond State Ins. Co.*, No. CV 05-148-M-JCL, 2008 U.S. Dist. LEXIS 44735, at *30 (D. Mont. June 5, 2008) ("a plaintiff cannot recover attorneys' fees as an element of damages attributable to a claim under the UTPA") (citing *Sampson*). Indeed, in *Mungas v. Great Falls Clinic*, 2009 MT 426, ¶ 44, 354 Mont. 50, 221 P.3d 1230, we observed that the Court had rejected claims in *Sampson* for an exception to the American Rule concerning attorney fees.

¶121 There is no statutory basis for the award of attorney fees in a UTPA action. The Court today has failed to indicate where in the UTPA statute recovery of attorney fees is allowed and has not indicated how the insurance exception should include recovery beyond the contractual claims. It is my opinion the Court has mischaracterized *Sampson*. I would vacate the award of attorney fees to the extent it represents fees attributable to the UTPA action, and remand for a determination of attorney fees incurred pursuant to the contractual damages only.

**Damages Necessary to Support UTPA Violation**

¶122 Although I would not reach this issue given my decision on CULI's reasonable basis in law defense, I would be remiss if I failed to indicate my disapproval of the Court's decision to allow contract damages to serve as the actual damages for an independent UTPA cause of action pursuant to § 33-18-242(1), MCA. Section 33-18-242(3), MCA, allows for an insured "who has suffered damages *as a result* of the handling of an insurance claim" to bring an action for "breach of the insurance contract, for fraud, or pursuant to this section . . ." (emphasis added). The UTPA provides an "independent cause of action" against an insurer for damages "caused by the insurer's violation of . . . 33-18-201." Section 33-18-242(1), MCA. This language is consistent with defining the UTPA as an independent action in tort arising out of the insurance contract. However, the "actual damages" which are "caused" by the tortious conduct are separate and distinct from the contractual damages recovered from a breach of the

53

contract. And the damages sought "as a result" of the handling of the claim must be based on the insurer's tortious conduct and a specific violation of the UTPA.

¶123 This Court has not directly addressed whether damages resulting from a breach of an insurance contract may serve as the actual damages for a tort violation pursuant to the UTPA. It has been observed that UTPA damages include actual and punitive damages which are distinct from damages for breach of insurance contract: "both kinds of damages available in [a UTPA] action are different from damages which may be awarded in a breach of contract claim for policy coverage." *Dees*, 260 Mont. at 451, 861 P.2d at 153 (Gray, J., with Turnage, C.J., and Nelson, J., concurring). Moreover, damages are always limited to those proximately caused by the violation or tortious conduct and, if requirements otherwise applicable are met, punitive damages. *See* William T. Barker & Ronald D. Kent, *New Appleman Insurance Bad Faith Litigation* § 11.04 (2d ed. 2014); William M. Shernoff et al., *Insurance Bad Faith Litigation* § 8.05 (2009). Other jurisdictions have rejected claims by the insured that actual damages under the UTPA include damages for breach of the insurance contract and have required that the insured establish a causal connection between the insurer's bad faith and the loss or damage suffered by the insured. *See Guessford v. Pa. Natl. Mut. Cas.*, 983 F. Supp. 2d 652, 666 (M.D.N.C. 2013); *Perera v. U.S. Fid. & Guar.*, 35 So. 3d 893, 903-04 (Fla. 2010); *Jarvis v. Farmers Ins. Exch.*, 948 P.2d 898, 900-01 (Wyo. 1997).

¶124 In my view, the trier of fact must find some damages, over and above the contractual damages awarded, which are causally connected to the UTPA violation and

which support the actual and punitive damages recoverable under this separate cause of action. I would affirm the District Court's order, jury instruction, and special verdict form which required the Estate to produce evidence of actual damages in addition to the contractual damages arising from the breach of contract.

## CONCLUSION

¶125 I concur with the Court's decision to adopt the notice-prejudice rule, though I would do so under different reasoning. I dissent from the Court's conclusion that CULI did not have a reasonable basis in law to deny the Estate's claims and from the Court's decision to allow recovery of attorney fees in a UTPA claim.


/S/ LAURIE McKINNON


Justice Jim Rice, concurring in part and dissenting in part.

¶126 I join Paragraphs 90-121 of Justice McKinnon's concurring and dissenting opinion regarding the reasonable basis of law defense, the notice-prejudice rule, and attorney fees for the estate.


/S/ JIM RICE