No. 94-549

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995


BRUCE WATTS,

Plaintiff and Appellant,

v.

WESTLAND FARM MUTUAL
INSURANCE COMPANY and
SEITZ INSURANCE AGENCY,

Defendants and Respondents.



FILED

MAY 23 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Seventh Judicial District,
               In and for the County of Richland,
               The Honorable Roy C. Rodeghiero, Judge presiding


COUNSEL OF RECORD:

        For Appellant:

        Arnie A. Hove, Attorney at Law, Circle, Montana

        For Respondents:

        L. D. Nybo, Attorney at Law, Great Falls,
        Montana

        Katherine M. Irigoin, Attorney at Law, Sidney,
        Montana


                        Submitted on Briefs:   April 6, 1995

                                   Decided:   May 23, 1995

Filed:

_____
                Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Bruce Watts (Watts) appeals the decision of the Seventh Judicial District Court, Richland County, granting summary judgment in favor of Westland Farm Mutual Insurance Company (Westland) and Seitz Insurance Company (Seitz). We affirm.

The issues are:

1. Did the District Court err in granting summary judgment in favor of Westland and Seitz on Watts's breach of contract claim?

2. Did the District Court err in granting summary judgment in favor of Seitz on Watts's negligent misrepresentation claim?

3. Did the District Court err in granting summary judgment in favor of Westland and Seitz on Watts's unfair trade practices claim?

Watts operates a farm in Richland County, Montana. In 1992 he obtained hail insurance for his cantaloupe crop from Westland through a local independent insurance agency, Seitz. Watts dealt directly with John Seitz, who then procured the insurance from Westland. Watts applied for insurance on his cantaloupe crop by signing a binder in May 1992. Seitz informed Watts that his crops would be insured at 12:01 a.m. the morning following his signing of the binder. Westland subsequently sent Watts a copy of the insurance policy which included the binder as the declaration page of the policy as well as additional policy terms. Watts was not required to pay his premium until October. Watts paid his premium in full and made no claims for hail damage in 1992.

In 1993 Watts applied with Seitz for crop insurance for his cantaloupe and grain crops. Seitz informed Watts that Seitz needed to verify the insurability of the cantaloupe crops with Westland. Watts applied for insurance by signing a binder on June 28, 1993, that went into effect on June 29, 1993, at 12:01 a.m. Despite Seitz's admonishment concerning the insurability of cantaloupe, the binder signed on June 28, 1993, included the cantaloupe crop. Watts claims he received a message on his answering machine the evening of June 28 from Seitz confirming the insurance of the cantaloupe crop. Seitz disputes this allegation. Watts's farm suffered a hail storm the evening of June 28, 1993, but the parties dispute whether the cantaloupe was damaged at that time.

Seitz sent the binder to Westland for processing. On July 1 or 2, 1993, Westland informed Seitz that it could not insure the cantaloupe because Westland was dealing with a new reinsurer and did not have an insurance adjuster capable of adjusting cantaloupe losses. Seitz relayed this message to Watts the same day. On July 12, 1993, Watts received a copy of his insurance policy from Westland. The policy again included the binder as the declaration page of the policy as well as additional policy terms. The reference to coverage of Watts's cantaloupe crop on the declaration page had been crossed out with the word "delete" written in the margin. The premium was reduced to reflect the coverage of Watts's grain crop alone.

On July 18, 1993, Watts's farm suffered another hail storm. Watts made an insurance **claim** and Westland sent an adjuster to

3

Watts's farm to ascertain the amount of damage sustained. The adjuster determined that a portion of Watts's grain crop was damaged approximately 5 percent. The adjuster did not examine the cantaloupe crop for damage.

Watts filed a complaint on December 2, 1993, claiming that Westland and Seitz were liable for damage to his cantaloupe crop suffered on July 18. The complaint alleged breach of contract, negligent misrepresentation and unfair trade practices pursuant to § 33-18-201, MCA. All parties moved for summary judgment. Following a hearing, the District Court denied Watts's motion and granted Westland's and Seitz's motions for summary judgment. Watts appeals the decision of the District Court.

We review summary judgment rulings de novo. Cooper v. Sisters of Charity (1994), 265 Mont. 205, 207, 875 P.2d 352, 353. Summary judgment is proper only when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Spain-Morrow Ranch, Inc. v. West (1994), 264 Mont. 441, 444, 872 P.2d 330, 331-32.

Issue 1

Did the District Court err in granting summary judgment in favor of Westland and Seitz on Watts's breach of contract claim?

Watts argues that his signing of the binder on June 28, 1993, resulted in his cantaloupe crop being insured as of 12:01 a.m. on June 29, 1993. Watts claims Westland could only cancel this policy after ten days written notice. Watts contends that the cantaloupe hail insurance described in the binder was in effect at the time of

4

the July 18, 1993, hail storm because he had not received sufficient written notice of cancellation. He maintains that neither the oral notification by Seitz on July 2 or his July 12, 1993, receipt of the insurance policy with the cantaloupe coverage provision deleted was sufficient to cancel the insurance coverage of his cantaloupe crop.

Westland and Seitz argue that a binder never went into effect. By its own terms, the binder does not go into effect if the crop to be insured suffers any damage before the effective hour of the insurance. Westland and Seitz claim that the hail storm on the evening of June 28, 1993, voided the binder before it became effective. Watts insists that while a hail storm took place on his farm on June 28, his cantaloupe did not suffer any damage at that time. Because there exists a disputed issue of fact as to whether the cantaloupe crop was damaged on June 28, we cannot affirm the District Court's granting of summary judgment on these grounds.

Westland and Seitz also argue that even if the binder went into effect on June 29, the binder was not in effect at the time of the July 18 hail storm. They maintain that, unlike an insurance policy, a binder is a form of temporary insurance coverage that is in effect only from the time the applicant signs the binder until the insurance carrier either accepts or rejects the application for insurance. They contend that the ten-day written notice requirement does not apply to temporary binders.

Section 33-15-1103, MCA, requires ten days written notice for midterm cancellation of an insurance policy. The ten-day written

5

notice requirement of § 33-15-1103, MCA, was incorporated into the crop insurance policy issued to Watts by Westland. This provision reads, in part:

> We may cancel all or any part of the insurance provided by us at any time during the first 60 days during which the policy is in effect by notifying you in writing <u>at least 10 days before the date and hour cancellation takes effect.</u> Notices of cancellation will be mailed 1st class or delivered to you at your address shown in the declaration. Proof of mailing will be sufficient proof of notice. [Emphasis added].

The ten-day notice applies only to midterm cancellation of insurance coverage. Cancellation, as used in this section, means "the decision by the insurer to terminate an insurance policy prior to the expiration of its terms." Section 33-15-1102(2), MCA.

Section 33-15-411, MCA, defines a binder as follows:

> Binders for temporary insurance. (1) Binders or other contracts for temporary insurance may be made orally or in writing and shall be deemed to include all the usual terms of the policy as to which the binder was given, together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.
>
> (2) <u>No binder shall be valid beyond the issuance of the policy with respect to which it was given</u> or beyond 90 days from its effective date, whichever period is shorter. [Emphasis added.]

By the express language of § 33-15-411(2), MCA, the term of a binder expires when the policy for which the binder applies is issued.

This interpretation of Montana's statutory scheme is supported by other authority.

> Generally a contract of temporary present insurance is terminated by the issuance, delivery, and acceptance of a policy, or by a rejection of the application, but if no policy is issued, delivered, and accepted, and the

> contract is not otherwise terminated, it continues until the time fixed thereby for its termination or a reasonable time has expired.

2 Couch on Insurance 2d § 14:3. Watts applied for insurance by signing a binder on June 28, 1993. The policy that related to this binder was issued on July 12, 1993. The policy included coverage of Watts's grain crop but did not include coverage of his cantaloupe crop. Pursuant to § 33-15-411(2), MCA, the binder was automatically void upon the issuance of the policy. No notice other than the issuance of the policy was required.

We conclude as a matter of law that the expiration of a binder upon the issuance of the insurance policy is not a "cancellation" within the meaning of Title 33 and therefore the ten-day notification provision is inapplicable. Therefore the District Court did not err in granting summary judgment in favor of Westland and Seitz on the breach of contract claim.

## Issue 2

Did the District Court err in granting summary judgment in favor of Seitz on Watts's negligent misrepresentation claim?

Watts alleged Seitz committed two acts of negligent misrepresentation. First, Watts claims that in May 1992 Seitz represented that he was a qualified and experienced insurance salesman and that he could obtain insurance for specialty crops such as cantaloupe. Second, Watts claims that Seitz refused or neglected to provide ten-day written notice that his cantaloupe crop was not covered

7

In Barrett v. Holland & Hart (1992), 256 Mont. 101, 845 P.2d 714, we set out the elements of a negligent misrepresentation claim:

1. the defendant made a representation as to a *past or existing* material fact;
2. the representation must have been untrue;
3. regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;
4. the representation must have been made with the intent to induce the plaintiff to rely on it;
5. the plaintiff must have been unaware of the falsity of the representation and he must have been justified in relying upon the representation;
6. the plaintiff, as a result of his reliance, must sustain damage.

Barrett, 845 P.2d at 718-19 (citing Kitchen Krafters, Inc. v. Eastside Bank of Montana (1990), 242 Mont. 155, 165, 789 P.2d 567, 573) (emphasis in original).

A review of the record reveals Watts has not presented any evidence that Seitz's statements concerning his experience and expertise as an insurance salesman were misrepresentations. Nothing in the record indicates that Seitz was anything but an experienced and successful insurance agent. Seitz's alleged statements concerning his ability to procure insurance for Watts's cantaloupe crop in 1992 were likewise not misrepresentations, because Seitz successfully procured insurance for Watts's cantaloupe crop in 1992. In 1993, Watts was no longer justified in relying on representations made in 1992, because he was informed on July 2 and again on July 12 that his cantaloupe crops were not

8

insured. Watts's reliance on previous representations made by Seitz was therefore unjustified.

Neither has Watts presented evidence that Seitz's failure or refusal to comply with the ten-day written notice requirement amounted to a negligent misrepresentation. As previously discussed, the ten-day written notice requirement is not applicable to the natural expiration of a temporary binder. More importantly for disposition of this issue, Seitz's failure to comply with the ten-day notice requirement was not a representation. By failing to give ten days written notice, Seitz did not make any "representation" as to a past or existing fact.

We conclude that Watts has failed to present evidence creating material issues of fact concerning negligent misrepresentation and that the District Court properly granted Seitz's motion for summary judgment as to this issue.

Issue 3

Did the District Court err in granting summary judgment in favor of Westland and Seitz on Watts's unfair trade practices claim?

Watts contends that Westland and Seitz violated Montana's Unfair Trade Practices Act. Watts's complaint alleged violations of the following provisions of § 33-18-201, MCA:

> Unfair claim settlement practices prohibited. No person may, with such frequency as to indicate a general business practice, do any of the following:
> (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue;
> .

9

(4) refuse to pay claims without conducting a reasonable investigation based upon all available information;

. . .

(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

. .

(9) . attempt to settle claims on the basis of an application which was altered without notice to or knowledge or consent of the insured

Watts argues that Westland and Seitz violated these provisions of § 33-18-201, MCA, and are therefore liable for damages.

Section 33-18-242(5), MCA, states:

An insurer may not be held liable under this section if the insurer has a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue.

We have previously determined that whether a "reasonable basis in law or in fact" exists is generally a question of fact reserved for the trier of fact. In Dean v. Austin Mutual Insurance Co. (1994), 263 Mont. 386, 869 P.2d 256, we stated "whether the insurer had a 'reasonable basis in law or in fact' is an issue properly presented for determination to the trier of fact." Dean, 869 P.2d at 258. We reiterated this position in DeBruycker v. Guaranty National Ins. Co. (1994), 266 Mont. 294, 298, 880 P.2d 819, 821

However, both Dean and DeBruvcker are distinguishable from the case at bar. In Dean and DeBruvcker there was no question that the plaintiffs maintained insurance policies with the insurers. Rather, the contested issues involved the applicability and amount of coverage under the specific facts and circumstances presented. Dean, 869 P.2d at 257-59; DeBruvcker, 880 P.2d at 820-21.

10

In the instant case, the District Court determined, as a matter of law, that the binder that temporarily insured the cantaloupe was not in effect at the time of the July 18, 1993 hailstorm. Therefore, there can be no genuine issues of material fact concerning Westland's and Seitz's obligations for damage to the cantaloupe crop.

Because there was no policy insuring the cantaloupe in effect at the **time** of the July 18, 1993 hailstorm, we conclude as **a matter** of law that Westland and Seitz had a reasonable basis in law and in fact for contesting Watts's claim which acts as a complete defense to a claim under § 33-18-201, MCA. By this opinion, we do not comment on whether Seitz, as an insurance agent or "producer," is subject to the provisions of § 33-18-201, MCA.

Because Watts has not established issues of material fact as to any of his substantive claims, we need not address the issue of punitive damages. We hold that the District Court did not err in granting summary judgment in favor of Westland and Seitz because there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law.

Chief Justice

11

We concur:

_____
Karla M. Gray

_____
James C. Nelson

_____
Fred J. Weber

_____
W. William Leaphart
        Justices

May 23, 1995

## CERTIFICATE OF SERVICE

,I hereby certify that tbe following certified order was sent by United States mail, prepaid, to the following named:

Arnie A. Hove
Attorney At Law
Box 184
Circle MT 59215-0184

L.D. Nybo
Attorney At Law
Box 2049
Great Falls MT 59403-2049

Katherine M. Irigoin
Attorney At Law
Box 1650
Sidney MT 59270-1650

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy