JUSTICE McKtNN ON,
concurring in part and dissenting in part.
¶88 I agree with our adoption of the notice-prejudice rule, but would do so pursuant to a different analysis. I am uncomfortable when we set *240 forth a new rule which does not provide adequate guidance or rationale to insureds and insurers in thé handling of insurance claims. Additionally, after examining our precedent regarding the notice-prejudice rule, I am convinced our conclusion that CULI did not have a reasonable basis in law to deny the untimely claims is contrary to our holdings in Redies v. Attorneys Liability Protection Society, 2007 MT 9, 335 Mont. 233, 150 P.3d 930, Shilhanek v. D-2 Trucking, 2003 MT 122, 315 Mont. 519, 70 P.3d 721, and Watters v. Guaranty National Insurance Co., 2000 MT 150, 300 Mont. 91, 3 P.3d 626, overruled in part on other grounds by Shilhanek, ¶ 21. Despite a valid contract, the direction of Steadele v. Colony Insurance Co., 2011 MT 208, 361 Mont. 459, 260 P.3d 145, and the “legal landscape” supporting CULI’s denial of benefits, we have mistakenly interjected questions of fact into what otherwise is a legal conclusion regarding our precedent. More importantly, we are requiring CULI to prove reliance on a legal theory that would have supported payment of the claim, rather than provided a basis to deny the claim. CULI did have a reasonable basis in law to contest the claim — reliance upon the express terms of the insurance contract — and did, in fact, rely upon the contract provision requiring that a claim be presented within 90 days.
¶89 Further, in my opinion, it is improper to award the Estate attorney fees for the jury trial of their UTPA claim. I would remand to the District Court for a determination of those fees and costs attributable to litigation of the contractual claim, both at trial and on appeal. In writing separately to address these concerns, I explain first the development of the notice-prejudice rule in the context of the reasonable basis in law defense to a UTPA claim, and second, my concerns regarding attorney fee3. Finally, I will address the damages necessary to support an independent UTPA action.
Reasonable Basis in Law
¶90 The Estate maintained that CULI’s denial of untimely filed claims was a violation of § 33-18-201(6), MCA, which provides:
Unfair claim settlement practices prohibited. A person may not, with such frequency as to indicate a general business practice, do any of the following:
(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear....
CULI moved for summary judgment on an affirmative defense of reasonable basis in law. Pursuant to § 33-18-242(5), MCA, “[a]n insurer *241 may not be held hable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue.” The District Court, in denying CULI’s motion, explained:
The result of this review of Montana law on the topic shows the existence of no clear rule. One could argue that prior to this Court’s decision, the no prejudice rule only in Montana applied in underinsured and uninsured motorist coverage claims.
While this Court was happy to impose the no prejudice rule in cases such as this, it certainly cannot agree with a contention that the law in Montana was clear on the subject. Thus, the Court must use this background in deciding the present motion for summary judgment.
The major problem with Central United’s motion is that the propriety of the insurer’s action must be based in light of the information possessed by the insurer at the time it adjusted the underlying claim. Here, it appears that Central United had no reference to Montana law. The Court does not expect the claims adjusters to have extensive legal training, however it does appear that the claim here was rejected based on a nationwide policy that had little or nothing to do with considerations of Montana law. It is that policy that we must examine at trial to determine if Central United’s actions were reasonable.
¶91 The Court adopts the District Court’s reasoning concluding that reasonable basis in law is an issue to be determined by the trier of fact. In doing so, we essentially conclude that although We adopt a new rule of law today, Opinion, ¶ 39, CULI’s failure to nevertheless rely upon that legal theory, which would require payment of the claim, defeats its reasonable basis in law defense. At best, this confuses the distinction maintained in the statute between law and fact ("reasonable basis in law or fact,” § 33-18-242(5), MCA (emphasis added)); at worst, it simply makes no sense. As CULI argues, this is akin to issuing a citation to a motorist driving within the legal speed limit because she may not have known the exact speed limit when stopped. It also overlooks that CULI’s reasonable basis in law defense was premised upon the unambiguous terms of the insurance contract and not the precedent from this Court establishing notice as a condition precedent to coverage.
¶92 An insurer asserting the defense of reasonable basis in law has the burden of establishing the defense by a preponderance of the evidence. Redies, ¶ 28 (citing Watters, ¶¶ 65, 67). The first step in determining whether an insurer has a reasonable basis in law to *242 contest a claim is to “survey the legal landscape as it existed during the relevant time period.” Redies, ¶ 29 (citing Shilhanek, ¶¶ 24-31). Next, from this perspective, the inquiry becomes whether there was a reasonable basis in law for the insurer to contest the claims. It is important to distinguish, which I believe our precedent and this Court today fail to do, between the affirmative defense of reasonable basis in law set forth in § 33-18-242(5), MCA, and the specific violation of the UTPA set forth in § 33-18-201(4), MCA, requiring that the insurer conduct “a reasonable investigation based upon all available information.” The former allows for a legal defense available at the time the claim was handled that would be reasonable to pursue. In contrast, a claim under § 33-18-201(4), MCA, examines the information available to the insurer to determine whether it has acted unreasonably in adjusting the claim.
¶93 We have, on occasion, construed the reasonable basis in law defense and attempted to draw a distinction between whether the issue presents a question of fact or a question of law. Our earlier cases dealt primarily with determinations that were factually driven, as compared to legal defenses, and we explained generally that these factual questions are to be resolved by the trier of fact. In Dean v. Austin Mutual Insurance Co., 263 Mont. 386, 389, 869 P.2d 256, 258 (1994), for example, we held that it was for the trier of fact to “weigh the evidence and judge the credibility of the witnesses” in determining whether the insurer had a reasonable basis for denying a claim pending the outcome of a criminal trial. See also Dees v. Am. Natl. Fire Ins. Co., 260 Mont. 431, 441-42, 861 P.2d 141, 147-48 (1993).
¶94 We modified the Dean trier of fact rule in Watts v. Westland Farm Mutual Insurance Co., 271 Mont. 256, 263, 895 P.2d 626, 630 (1995) send Bartlett v. Allstate Insurance Co., 280 Mont. 63, 70, 929 P.2d 227, 231 (1996). In Watts, 271 Mont. at 263, 895 P.2d at 630, we affirmed the district court’s order granting summary judgment for Westland and held that, as a matter of law, a binder that temporarily insured a cantaloupe crop was not in effect at the time of a hailstorm and that there was a reasonable basis for contesting the insured’s claim. We similarly concluded in Bartlett, 280 Mont. at 70, 929 P.2d at 231, that the district court did not err in granting summary judgment to the insurer where the insured did not have an insurable interest in the property.
¶95 It was not until Watters that we dealt with a reasonable basis in law defense premised upon unclear legal precedent. In Watters, ¶¶ 31-42, this Court had to reconcile conflicting precedent regarding whether *243 a “settlement” for policy limits was legally possible without the insured executing a release. We held that “a plain reading of the available case law at the time gave Guaranty a reasonable basis in law upon which it could deny payment of the policy limits” and that, “at the time this dispute arose, Juedeman [c. National Farmers Union Property & Casualty Co., 253 Mont. 278, 833 P.2d 191 (1992)] was the lone precedent” providing a reasonable basis in law to contest the amount of the claim. Watters, ¶¶ 71-72. We explained that
the “trier of fact” rule set forth in Dean is not necessary in a summary judgment proceeding where the underlying “basis in law” is grounded on a legal conclusion, and no issues of fact remain in dispute. Here, therefore, it is for the court, not the trier of fact, to determine whether our holding in Juedeman sufficiently provides an absolute defense as a matter of law in this instance.
We revisited the Watters analysis in Shilhanek, ¶ 30, where we held that D-2 Trucking’s insurer, Canal Insurance Company, because it made its offer of settlement prior to our decision in Watters, “had an arguably reasonable basis in law” for conditioningits payment of policy limits on obtaining a release, and “[could] not be held hable for acting in bad faith ... .” We affirmed the district court’s grant of summary judgment to Canal. Shilhanek, ¶ 31.
¶96 Our most recent pronouncement on the reasonable basis in law defense came in Redies. We again tried to clarify the distinction between reasonable basis in law and reasonable basis in fact and explained that “reasonableness is a question of law for the court to determine when it depends entirely on interpreting relevant legal precedents and evaluating the insurer’s proffered defense under those precedents.” Redies, ¶ 35. Our conclusion was consistent both with the fundamental principle that a jury does not decide the law and our obligation to honor the clear language of § 33-18-242(5), MCA (“An insurer may not be held hable under this section if the insurer had a reasonable basis inlaw... for contesting the claim.” (emphasis added)).
¶97 Turning then to the relevant “legal landscape,” Defies, ¶ 29, this Court must examine whether CULI had a reasonable basis in law to deny the Estate’s claim. Important to answering this question is how the question is actually framed. CULI represented that they denied benefits to the Estate based upon the terms of the contract requiring a claim for benefits to be submitted within 90 days of the insured’s loss. Neither party disputes the validity or requirements of this notice provision. The Estate, however, asks that it be relieved from this obligation because CULI has not suffered any prejudice as a result of *244 the late notice. CULI maintains that it relied upon the terms of the contract in denying coverage. Thus, the real question is whether it was unreasonable for CULI to rely on the terms of the contract; or, more to the point, whether Montana legal precedent established a notice-prejudice rule for the payment of untimely benefits which made it unreasonable for an insurer to rely on a specific limitations provision of the insurance contract to deny a claim. Although the formal adoption of a notice-prejudice rule for the first time today, Opinion ¶ 39, clearly establishes that an insurer may be required to pay an untimely filed claim in the absence of prejudice, I will nevertheless examine our precedent to demonstrate that at the time the Estate’s claims were submitted, CULI had a reasonable basis in law to rely on the terms of its contract.
¶98 The most recent and binding authority regarding the notice-prejudice rule comes from our recent decision in Steadele. We observed in Steadele that notice provisions in insurance policies have been considered a “condition precedent” and requirement of the policy from as far back as 1925. Steadele, ¶ 22 (citing La Bonte v. Mutual Fire & Lightning Ins. Co., 75 Mont. 1, 12, 241 P. 631, 635 (1925) (notice requirement in an insurance policy “is a condition precedent, and failure to comply therewith will bar a recovery under the policy, unless the condition is waived by the company”) and Riefflin v. Hartford Steam Boiler Inspection & Ins. Co., 164 Mont. 287, 293, 521 P.2d 675, 678 (1974) (“failure of the [insureds] to submit notifications of accident and proof of loss as soon as practicable, as required by the policy, barred any claims for reimbursement...”)). Based upon the language of the insurance contract, we concluded there was no dispute that the Steadeles had not complied with the provisions requiring timely notice, and therefore, they could not bring a suit against the insurer unless all provisions of the policy’s terms had been complied with. Steadele, ¶¶ 23-27. In my opinion, Steadele undisputedly provides CULI with a reasonable basis in law to deny the Estate’s claims for violation of the contract’s notice provisions.
¶99 Nevertheless, the Court relies upon Sorensen v. Farmer’s Insurance Exchange, 279 Mont. 291, 927 P.2d 1002 (1996), Augustine v. Simonson, 283 Mont. 259, 940 P.2d 116 (1997), and Lee v. Great Divide Insurance Co., 2008 MT 80, 342 Mont. 147, 182 P.3d 41, to support its claim that we have a “longstanding inclination to require an insurer to establish prejudice by late notice of a claim before we will enforce the coinciding exclusion.” Opinion, ¶ 29. I have a serious problem with holding a party accountable for nearly $1 million *245 (including benefits, attorney fees and costs) based upon an “inclination.” Moreover, all of the cases cited as authority by the Court involved uninsured or underinsured motorist policies with different public interest concerns than a general liability policy. la Lee, ¶ 21, which involved a claim of uninsured motorist coverage, we concluded that there was untimely notice and a material breach of the policy’s notice requirements that was sufficient to deny coverage. While the Court characterizes this as an “unstated possibility that a lack of prejudice could have compelled a different result,” Opinion, ¶ 29, we clearly stated that Lee’s policy expressly required that he provide notice and that the failure to do so constituted a material breach, Lee, ¶ 21. We held in Lee, ¶ 21, that “[t]hese omissions were a material breach of Lee’s policy and are independently sufficient to deny coverage to Lee.”
¶100 The Court’s reliance on cases involving uninsured and underinsured motorists to establish exceptions to a term of the contract imposing time limitations is similarly misplaced. The notice-prejudice rule in Sorensen was limited to a claim filed by an underinsured motorist and explained that, in addition to there being no prejudice to the insured, “[t]he purpose of underinsured motorist insurance is to provide a source of indemnification for accident victims when the tortfeasor does not provide adequate indemnification.” Sorensen, 279 Mont. at 295-96, 927 P.2d at 1005. Such a purpose and objective does not exist in a first-parly contract for insurance. Additionally, Augustine, 283 Mont. at 264, 940 P.2d at 119, which the Court cites for an unknown proposition, Opinion, ¶¶ 27-28, dealt with an exhaustion clause in an underinsurance policy and whether it was enforceable as a matter of public policy. I am not sure what this provides to the analysis regarding notice provisions contained within first-party contracts.
¶101 In my opinion, Steadele clearly establishes that CULI had a reasonable basis in law to contest payment of the Estate’s untimely benefits and that no definitive authority to the contrary existed within the “legal landscape.” Nevertheless, within the context of the above-referenced authority, we must also consider the equally well-established principle that if a contract’s terms are clear and unambiguous, the contract language will be enforced. Section 28-3-401, MCA; Youngblood v. Am. States Ins. Co., 262 Mont. 391, 395, 866 P.2d 203, 205 (1993); Keller v. Dooling, 248 Mont. 535, 539, 813 P.2d 437, 440 (1991). This Court has held that the only exception to enforcing an unambiguous contract is if the disputed term violates public policy or *246 is against good morals. Section 28-2-701, MCA; Youngblood, 262 Mont. at 395, 866 P.2d at 205; Amsterdam Lumber, Inc. v. Dysterhouse, 179 Mont. 133, 140, 586 P.2d 705, 709 (1978). Prior to today, there was no definitive authority in this State indicating that enforcement of a limitations period to bar an untimely claim was against public policy unless the insurer demonstrated prejudice.
¶102 As a final comment, I believe we do a great disservice to the legal community and public when we mischaracterize our legal precedent in order to support a new position that the Court is considering. Steadele, after examining nearly 100 years of precedent, clearly stated that a notice requirement in an insurance policy is a condition precedent to coverage. Steadele, ¶ 22. Steadele has been relied upon by not only CUU, but other courts to deny untimely claims. Atl. Cas. Ins. Co. v. GTL, Inc., 915 F. Supp. 2d 1169, 1176 (D. Mont. 2013) (“The more recent and pertinent binding authority [Steadele] is contrary to the argument and authority of Defendants’ prejudice claims, which are without merit.”). I have no problem with examining the propriety of adopting a new rule of law; however, I do take issue with our mischaracterization of precedent in order to say we have always been “inclin[ed],” Opinion, ¶ 29, or predisposed “without explicitly adopting,” Opinion, ¶ 23, as if we have always applied the notice-prejudice rule. Our precedent did not support a notice-prejudice exception to the timely filing of claims, and CULI had a reasonable basis in law to deny the untimely claims presented by the Estate.
¶103 With the foregoing in mind, I would conclude that the District Court erred in denying CULI’s motion for summaiy judgment on CULI’s reasonable basis in law defense. CULI’s reasonable basis in law defense was improperly submitted to a jury for resolution as a question of fact, when it clearly required a legal conclusion for a court to decide. Our legal precedent establishes, as a matter of law, that CULI had a reasonable basis to deny the Estate’s untimely benefits based upon the clear and unambiguous terms of the contract’s notice requirements. CULI was not required to show reliance on an exception to the notice requirements — not adopted by this Court — which advocated the Estate’s theory for paying benefits. It was improper to require CULI to demonstrate that it considered and relied upon legal theories that would support the payment of claims; rather, CULI had to demonstrate it had a reasonable basis in law to deny the payment of claims. In the absence of precedent adopting a notice-prejudice rule, CULI’s reasonable basis in law to deny the untimely claims was the insurance contract itself. Having concluded that CULI had a reasonable basis in *247 law to deny the claims, I now set forth the legal analysis I believe appropriate for our adoption of the notice-prejudice rule.
Notice-Prejudice Rule
¶104 Montana, like most states, recognizes the validity of conditions precedent for insurance coverage. We have repeatedly stated that courts should construe an insurance contract in the same manner as any other contract. Monroe v. Cogswell Agency, 2010 MT 134, ¶ 15, 356 Mont. 417, 234 P.3d 79 (citing Stutzman v. Safeco Ins. Co. of Am., 284 Mont. 372, 376, 945 P.2d 32, 34 (1997)); Conlon v. N. Life Ins. Co., 108 Mont. 473, 498, 92 P.2d 284, 296 (1939). Moreover, it is the court’s duty to enforce contracts according to their plain terms and the court may not create a new contract for the parties. Monroe, ¶ 15; Estate of Irvine v. Oaas, 2013 MT 271, ¶ 14, 372 Mont. 49, 309 P.3d 986. Regarding notice requirements, the result of this traditional approach has often been that the insurer was relieved of liability which might otherwise be imposed. Nevertheless, consistent with this traditional common law approach, this Court stated in Steadele, ¶ 22, that notice was a condition precedent to recovery under the policy.
¶105 In support of today’s decision to depart from the strict contractual approach of our past decisions, I would offer several reasons. I am happy to see that some of my rationale has been adopted by the Court, but I will nevertheless set forth my complete analysis. First, general principles of contract law concerning partial or immaterial breach support adoption of a notice-prejudice rule. The Restatement (Second) of Contracts provides for continued performance of a contract in cases when non-occurrence of a condition would cause a disproportionate windfall, stating: “To the extent that the nonoccurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.” Restatement (Second) of Contracts § 229 (1979). A comment to this section elaborates this principle:
In determining whether the forfeiture is “disproportionate,” a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture. The character of the agreement may, as in the case of insurance agreements, affect the rigor with which the requirement is applied.
Restatement (Second) of Contracts § 229 cmt. b. Tims, a party is excused from failure to perform a condition in the contract if an *248 inequitable forfeiture would occur. However, the court can only excuse performance of the condition if the condition was not a material part of the contract. Hence, the notice-prejudice rule is an application ofthis principle by excusing the non-performance of a procedural or non-material term of the contract. The requirement of no prejudice ensures that notice is an immaterial condition. Our precedent establishes that we have excused a condition of forfeiture where to give it effect would have arbitrarily resulted in a windfall to the other party. See Quigley v. Acker, 1998 MT 72, ¶ 39, 288 Mont. 190, 955 P.2d 1377. Additionally, as set forth in ¶¶ 30-34 of our Opinion, these principles of partial or immaterial breach accord with Montana’s anti-forfeiture laws.
¶106 Another reason for adoption of the notice-prejudice rule is that there is no justification for defeating coverage when the purpose behind the notice condition is lacking. The requirement of notice of an accident or loss within a certain period of time is to give the insurer an opportunity to acquire, through an adequate investigation, full information about the circumstances of the case, on the basis of which it can proceed through disposition, either through settlement or defense of the claim. 8 John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4731,2-5 (rev. ed. 1981). The purpose of the notice provisions has been described as follows:
The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim, is to give the insurer an opportunity to make a timely and adequate investigation of all circumstances. An adequate investigation often cannot be made where notice is long delayed, because of the possible removal or lapse of memory on the part of witnesses, the loss of opportunity for examination of the physical surroundings and making of photographs thereof for use at trial, and the possible operation of fraud, collusion, or cupidity. Such a requirement tends to protect the insurer against fraudulent claims, and also against invalid claims made in good faith. And further, if the insurer is thus given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation.
Appleman & Appleman, supra, § 4731, at 2-5.
¶107 Prompt notice clauses therefore serve a significant purpose and cannot be merely regarded as serving the competing interests between the particular insured and insurer. The interests of the public generally may be better served by early and prompt investigation, which reduces the risk of successful fraudulent claims and reduces the cost of premiums by shortening the period and degree of uncertainty *249 concerning the number of claims and their amounts. See Robert E. Keeton & Alan I. Widiss, Insurance Law — A Guide to Fundamental Principles, Legal Doctrines and Commercial Practices § 7.2(a), 749-52 (1988). Therefore, where the function and purpose of the notice provision has not been frustrated by the insured — i.e., where there is no prejudice — the reason behind the notice condition in the policy is lacking. In these cases, the notice clause should not serve as a technical basis for the insurer to escape liability.
¶108 A third reason for departing from the strict traditional approach is that it ignores the nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather, its conditions are by and large dictated by the insurance company to the insured. Giacometti v. Scottsdale Ins. Co., 2009 MT 418, ¶ 42, 354 Mont. 15, 221 P.3d 666; Brakeman v. Potomac Ins. Co., 371 A.2d 193, 196 (Pa. 1976). The only aspect of the conditions of an insurance policy the insured can bargain for is the monetary amount of the coverage. This court has recognized the unequal bargaining power of the parties to an insurance policy and observed that they are contracts of adhesion. Giacometti, ¶ 42. Hence, a proper analysis of whether to enforce a notice condition requires that the unequal relationship between the parties be considered.
¶ 109 Lastly, courts that have adopted the notice-prejudice rule have recognized the public interest in enforcing insurance contracts to further the goal of compensating tort victims. A significant point to observe, however, is that these public policy arguments have been made in the context of uninsured and underinsured motorist coverage where the legislature has enacted specific statutes to protect against financial loss visited upon innocent traffic accident victims by negligent motorists. See § 33-23-201, MCA. By enacting these statutes, the Montana legislature specifically sought to avoid inadequate compensation to victims of automobile accidents. To defeat this propose by enforcing arbitrarily a forfeiture condition in an insurance contract would frustrate the policy as declared by the legislature.
¶110 The Court states that the public policy of Montana is that a policy provision that defeats coverage for which valuable consideration has been received should not be enforced. Opinion, ¶ 24. In State Farm Mutual Automobile Insurance Co. v. Gibson, 2007 MT 153, ¶ 22, 337 Mont. 509, 163 P.3d 387, which the Court cites for this public policy proposition, we extended the public policy considerations underlying uninsured and underinsured motorist coverage articulated in Hardy v. Progressive Specialty Insurance Co., 2003 MT 85, ¶ 21, 315 Mont. *250 107, 67 P.3d 892, and Bennett v. State Farm Mutual Automobile Insurance Co., 261 Mont. 386, 389, 862 P.2d 1146, 1148 (1993), to address the stacking of medical payments coverage. The public policy, however, underlying a statutory provision requiring uninsured motorist coverage, see § 33-23-201, MCA, does not necessarily extend to a contract’s provisions dealing with notice. The requirement of notice also serves important public interest considerations. In my opinion, it is normally more appropriate for the legislature to express the public policy of Montana through the enactment of statutes. Were it not for the other considerations which are consistent with contract principles and forfeiture, I would find it difficult to alter the terms of a contract, the enforcement of which is equally supported by public policy, absent more specific legislative direction. Indeed, an argument can be made that the policy considerations of compensating innocent tort victims for injuries caused by uninsured motorists are not implicated with general liability policies because general liability policies are not mandated by the legislature and are voluntarily purchased. Moreover, many state courts that have articulated the merits of the notice-prejudice rule have done so in the face of legislative enactments adoptingthe rule and announcing the public policy of the state to require an insurer to show prejudice before disclaiming coverage. See Prince George’s Cnty. v. Local Govt. Ins. Trust, 879 A.2d 81, 96 (Md. 2005).
¶111 In spite of our primary reference to public policy of the state as a justification for the notice-prejudice rule, I would, based on the foregoing analysis, join the overwhelming majority of states[1] and adopt a notice-prejudice rule in first-party insurance contracts, consistent with principles of forfeiture and immaterial or partial breach. I would evaluate prejudice in the context of the interests notice provisions are designed to protect, as explained above. There remains, however, the question of how to incorporate the consideration of prejudice into our analysis.
¶112 States that consider prejudice usually follow one of three different approaches: (l)onceitis shown that the insured has breached the notice provision, the contract is nevertheless effective unless the insurer has shown that it has been prejudiced by the delay; (2) once it *251 is shown that the insured has breached the notice provision, a rebuttable presumption exists that the insurer has been prejudiced by the delay; or (3) prejudice is considered as a factor in the initial inquiry of whether the insured has provided timely notice. See Alcazar v. Hayes, 982 S.W.2d 845,853 (Term. 1998); Russ & Segalla, supra, § 193:25; Marvel, supra, §§ 3-5.
¶113 While I can appreciate the rationale that it is the insured that is seeking to be excused from terms of a contract provision, I would nevertheless require that the insurer bear the burden of demonstrating prejudice. I believe this is the better-reasoned approach and one that will more effectively handle incorporation of the rule. The prevailing view among states incorporating prejudice is that once it is demonstrated that the insured breached the notice provision, the burden of proof is allocated to the insurer to prove it has been prejudiced by the breach. There are several justifications for imposing the burden on the insurer. First, it is very difficult for the insured to prove a negative and hence difficult or impossible to prove no prejudice. Second, the insurer is in a better position to know the facts that would substantiate prejudice. See Clementi v. Nationwide Mut. Fire Ins. Co., 16 P.3d 223, 231 (Colo. 2001). Third, it is the insurance company that is choosing to disclaim its obligations under the policy. Brakeman, 371 A.2d at 198.
¶114 Lest my decision be perceived as encouraging dilatory tactics on the part of the insured or as unfair to the insurer, I would impose a requirement that the insured, for the period of delay beyond the limits of timeliness, show that he or she was acting in good faith and that the delay was not purposeful. Equity dictates that a bad-faith delay in notifying an insurer, even though no material prejudice results, should be considered when deciding whether the policy should be enforced. See Great Am. Ins. Co. v. C. G. Tate Constr. Co., 279 S.E.2d 769, 776 (N.C. 1981). Moreover, implicit in every contract is the requirement that the parties act in good faith. Story v. Bozeman, 242 Mont. 436, 450, 791 P.2d 767, 775 (1990), overruled in part on other grounds by Arrowhead Sch. Dist. No. 75 v. Klyap, 2003 MT 294, ¶ 54, 318 Mont. 103, 79 P.3d 250.
¶ 115 Therefore, I would adopt a two-step process for the evaluation of untimely claims. This approach would require a preliminary determination of whether the insured’s notice was timely. Such a determination should include an evaluation of the reasonableness of the delay which would incorporate the insured’s reasons and the existence of good faith. Once a court determines that an insured’s notice was untimely, and that the delay was unreasonable, it should *252 then turn to the issue of whether the insured was prejudiced by such untimely notice. Such an approach is in accord with the majority of jurisdictions. See Clementi, 16 P.3d at 231; Ouellette v. Maine Bonding & Cas. Co., 495 A.2d 1232, 1234 (Me. 1985); State Farm Mut. Auto. Ins. Co. v. Gregorie, 748 A.2d 1089, 1093 (Md. Ct. Spec. App. 2000); Am. Cont’l Ins. Co. v. Phicolns. Co., 512 S.E.2d 490, 494 (N.C. Ct. App. 1999); Brakeman, 371 A.2d at 196.
¶ 116 Lastly, there may be a limited exception to the notice-prejudice rule allowing that insurer prejudice will be presumed as a matter of law when an insured fails to notify the insurer of a pending lawsuit against him until after a default judgment has been entered. See Campbell v. Cont’l Cas. Co. of Chicago, 170 F.2d 669, 673 (8th Cir. 1948); Prince George’s Cnty., 879 A.2d at 85-86; Members Ins. Co. v. Branscum, 803 S.W.2d 462, 466 (Tex. Ct. App. 1991). Normally, under the default exception to the notice-prejudice rule, prejudice is presumed to be present even though, for example, the insurer has the option of filing for a new trial. Branscum, 803 S.W.2d at 466.[2]
¶117 We adopt a new rule today that arguably conflicts with our prior jurisprudence and departs from our traditionally strict interpretation of insurance contracts. A notice-prejudice rule will significantly alter the handling of insurance claims in this State. I therefore believe it is important to properly set forth the analysis upon which I have arrived at my decision. In order to assist in the handling of these claims, I have discussed how prejudice is to be incorporated into the burden of proof. In these proceedings, CULI has admitted they have not suffered any prejudice by the insured’s late filing of claims. I would therefore affirm the directed verdict entered by the District Court on the untimely filed claims.
Attorney Fees for the Estate
¶118 Contrary to our characterization today of Sampson v. National Farmers Union Property & Casualty Co., 2006 MT 241, 333 Mont. 541, 144 P.3d 797, it is my opinion that this Court has definitively held that attorney fees are not recoverable in a UTPA action. Sampson, ¶ 22; Jacobsen v. Allstate Ins. Co., 2009 MT 248, ¶ 23, 351 Mont. 464, 215 P.3d 649. Pursuant to the insurance exception to the American Rule, if a party prevails on their contractual claims, they are entitled *253 to attorney fees incurred in obtaining those benefits. Mountain W. Farm Bureau Mut. Ins. Co. v. Brewer, 2003 MT 98, ¶ 14, 315 Mont. 231, 69 P.3d 652. The Estate is entitled to recover their attorney fees on the contractual damages awarded by the District Court in its directed verdict.
¶119 In Sampson, ¶ 15, we restated the general rule in Montana “that a party is not entitled to attorney's fees absent a specific contractual provision or statutory grant.” We further held in Sampson that “[t]he Legislature is capable of authoring and enacting statutes which clearly permit tort victims to recover attorney fees.” Sampson, ¶ 21. We next held that, “[t]his being so, we will not engage in a presumption that the Legislature intended fees as an element of damages but simply neglected to so specify.” Sampson, ¶ 21.
¶120 I do not think Sampson could be any clearer. Moreover, other courts have relied on our rule stated in Sampson that attorney fees are not recoverable in a UTPA action. See Davis v. Progressive Cas. Ins. Co., 220 Fed. Appx. 708, 712 (9th Cir. 2007) (“because attorney’s fees are not recoverable under the UTPA, the district court did not abuse its discretion in denying Davis’s request for attorney’s fees”) (citing Sampson); Colman Constr., Inc. v. Diamond State Ins. Co., No. CV 05-148-M-JCL, 2008 U.S. Dist. LEXIS 44735, at *30 (D. Mont. June 5, 2008) (“a plaintiff cannot recover attorneys’ fees as an element of damages attributable to a claim under the UTPA”) (citing Sampson). Indeed, in Mungas v. Great Falls Clinic, 2009 MT 426, ¶ 44, 354 Mont. 50, 221 P.3d 1230, we observed that the Court had rejected claims in Sampson for an exception to the American Rule concerning attorney fees.
¶121 There is no statutory basis for the award of attorney fees in a UTPA action. The Court today has failed to indicate where in the UTPA statute recovery of attorney fees is allowed and has not indicated how the insurance exception should include recovery beyond the con tractual claims. It is my opinion the Court has mischaracterized Sampson. I would vacate the award of attorney fees to the extent it represents fees attributable to the UTPA action, and remand for a determination of attorney fees incurred pursuant to the contractual damages only.
Damages Necessary to Support UTPA Violation
¶122 Although I would not reach this issue given my decision on CULI’s reasonable basis in law defense, I would be remiss if I failed to indicate my disapproval of the Court’s decision to allow contract damages to serve as the actual damages for an independent UTPA
*254 cause of action pursuant to § 33-18-242(1), MCA. Section 33-18-242(3), MCA, allows for an insured “who has suffered damages as a result of the handling of an insurance claim” to bring an action for “breach of the insurance contract, for fraud, or pursuant to this section ...” (emphasis added). The UTPA provides an “independent cause of action” against an insurer for damages “caused by the insurer’s violation of ... 33-18-201.” Section 33-18-242(1), MCA. This language is consistent with defining the UTPA as an independent action in tort arising out of the insurance contract. However, the “actual damages” which are “caused” by the tortious conduct are separate and distinct from the contractual damages recovered from a breach of the contract. And the damages sought “as a result” of the handling of the claim must be based on the insurer’s tortious conduct and a specific violation of the UTPA.
¶123 This Court has not directly addressed whether damages resulting from a breach of an insurance contract may serve as the actual damages for a tort violation pursuant to the UTPA. It has been observed that UTPA damages include actual and punitive damages which are distinct from damages for breach of insurance contract: “both kinds of damages available in [a UTPA] action are different from damages which may be awarded in a breach of contract claim for policy coverage.” Dees, 260 Mont. at 451, 861 P.2d at 153 (Gray, J., with Tumage, C.J., and Nelson, J., concurring). Moreover, damages are always limited to those proximately caused by the violation or tortious conduct and, if requirements otherwise applicable are met, punitive damages. See William T. Barker & Ronald D. Kent, New Appleman Insurance Bad Faith Litigation § 11.04 (2d ed. 2014); William M. Shemoff et al, Insurance Bad Faith Litigation § 8.05 (2009). Other jurisdictions have rejected claims by the insured that actual damages under the UTPA include damages for breach of the insurance contract and have required that the insured establish a causal connection between the insurer’s bad faith and the loss or damage suffered by the insured. See Guess ford v. Pa. Natl. Mut. Cas., 983 F. Supp. 2d 652, 666 (M.D.N.C. 2013); Perera v. U.S. Fid. & Guar., 35 So. 3d 893, 903-04 (Fla. 2010); Jarvis v. Farmers Ins. Exch., 948 P.2d 898, 900-01 (Wyo. 1997).
¶124 In my view, the trier of fact must find some damages, over and above the contractual damages awarded, which are causally connected to the UTPA violation and which support the actual and punitive damages recoverable under this separate cause of action. I would affirm the District Court’s order, jury instruction, and special verdict form which required the Estate to produce evidence of actual damages *255 in addition to the contractual damages arising from the breach of contract.
CONCLUSION
¶125 I concur with the Court’s decision to adopt the notice-prejudice rule, though I would do so under different reasoning. I dissent from the Court’s conclusion that CULI did not have a reasonable basis in law to deny the Estate’s claims and from the Court’s decision to allow recovery of attorney fees in a UTPA claim.

 See 13 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 193:25 (3d ed. 2005); Charles C. Marvel, Annotation, Modem Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured’s Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers, 32 A.L.R. 4th 141, §§ 3-5 (1984 & Supp. 2014).

 There is a third exception to the notice-prejudice rule observed by several courts. This concerns “claims-made’’ policies as contrasted with policies based upon “occurrence.” Applying the notice-prejudice rule to a claims-made policy would essentially convert it, so the rationale goes, into an occurrence policy.